**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

JOSEPH A. DENBOW and SEAN R. RAGSDALE, *on their own and on behalf of a class of similarly situated persons*,

*Petitioners*,

v.

MAINE DEPARTMENT OF CORRECTIONS and RANDALL A. LIBERTY, Commissioner of Maine Department of Corrections *in his official capacity*,

*Respondents*

Case No. 20-cv-00175-JAW

**JOINT STATUS REPORT AND PROPOSED BRIEFING SCHEDULE**

Pursuant to the Court's May 18, 2020 Minute Entry, Petitioners, Joseph Denbow and Sean Ragsdale, and Respondents, Maine Department of Corrections and Commissioner Randall Liberty, hereby provide the following joint status report and proposed briefing schedule.

**I. Factual Update:**

**Respondents' Update:**

COVID-19 CONFIRMED CASE: On the afternoon of May 19, 2020, MDOC learned that an inmate at the Maine Correctional Center tested positive for COVID-19. He had been in isolation since May 17, when he first began experiencing symptoms. He does not currently require hospitalization. His identity is not being released to protect his privacy and his protected health information. A copy of the press release MDOC issued yesterday is attached to this status report. MDOC's medical provider, Wellpath, is caring for him.

Since learning about that positive result, MDOC (in consultation and agreement with the Maine CDC) conducted 200 additional tests, 70 of which have already come back as negative for COVID-19. Additional samples are being collected at Maine Correctional Center today for testing,

and MDOC will be conducting testing of all inmates at the Maine Correctional Center. MDOC is working aggressively with the Maine CDC to expand the scope of testing. There have been no transfers from the Maine Correctional Center to Mountain View (where Mr. Ragsdale and Mr. Denbow are housed) in the last month. There have also not been any transfers from county jail to the Maine Department of Corrections since early April, and the Governor ordered that no such transfers shall occur until the end of the emergency she declared or until she rescinds the order. (Executive Order 54, signed May 15, 2020.)

**Joint Factual Update:**

MR. DENBOW'S STATE POST-CONVICTION REVIEW PROCEEDING: On Monday, May 18, 2020, after the conference with the Court, counsel for both parties learned for the first time that in late April, the Superior Court had issued an order assigning Mr. Denbow's petition for post-conviction review to a judge and ordered the State to respond to Mr. Denbow's petition within 21 days of receipt of the order (by June 8). Attached to this Joint Statement are a copy of the docket sheet in Mr. Denbow's case that the Superior Court sent counsel for both parties on May 20, 2020, as well as the two orders the parties received from the Superior Court.

**II. Service**

Respondents agree to waive formal service. As this is a habeas petition, counsel for Respondents maintain that the federal rules governing habeas petitions, Rule 4 of the District of Maine Local Rules, and Appendix III apply and govern service. Counsel for Petitioners disagrees and will send counsel for Respondents waiver of service documents and will file with the Court once completed. Either way, service is not contested.

**III. Relief**

**Petitioners' Position:** On Monday, May 18, 2020, Petitioners filed a combined motion for temporary restraining order and preliminary injunction. Pet. Mot., ECF No. 5. In view of the recent positive COVID-19 test, Petitioners request additional narrow and immediate relief to protect putative class members as briefing proceeds. An order from the Court is necessary because the exponential spread of the virus could lead to outbreaks in the facilities before briefing is complete and before any decision can be issued on the preliminary injunction. Specifically, in view of the need for testing, transparency, and access (as discussed in further detail below), Petitioners respectfully request an order requiring:

> (1) universal testing in the Maine Correctional Center and spot testing of asymptomatic prisoners in the Maine Correctional Center, the Maine State Prison, and the Bolduc Correctional Facility;
>
> (2) accommodations to ensure counsel's access to discuss conditions with members of the putative class;
>
> (3) immediate disclosure of infection control policies implemented by DOC and any positive tests of putative class members.

The requested relief is narrowly tailored and limited to the current emergency, "as law and justice require." *See* 28 U.S.C. § 2243 (requiring the court in a habeas case to "dispose of the matter as law and justice require"). Now that COVID-19 has been confirmed in at least one facility, immediate and rapid testing and disclosure is required to protect putative class members in the short term.

An order regarding additional testing is required because, as early as several days ago, the Department of Corrections publicly reiterated its position that it would focus testing only on symptomatic prisoners, and would not complete spot testing of asymptomatic prisoners who may be spreading the infection. *See* Dan Neumann, *Maine prisons haven't been broadly testing inmates, now they have a COVID-19* infection, Maine Beacon (May 20, 2020), https://bit.ly/3cQun6d (quoting DOC employee Anna Black as stating that "[a]t this time, . . .

'spot testing' is not something we are planning to do"). Although DOC has performed additional testing since the positive test in the Windham facility, they have not publicly committed to spot testing in other facilities where there may be current, but undetected outbreaks of the virus.

Additionally, any positive tests arising from the recent increase in testing must be shared with the Petitioners, including if putative class members test positive for COVID-19. Such information is critical to ensure that counsel are able to represent the interests of the putative class in the midst of the fast-changing emergency. Finally, additional disclosure and access to putative class members is also critical as briefing proceeds. The confirmed presence of COVID-19 has interrupted Petitioner's counsel's access to information and putative class members within at least some DOC facilities. This morning, in response to an attempt to set up a call with a member of the putative class, a case worker at Maine Correctional Center conveyed that it could be many days before the prisoner would be able to return any calls, because of lockdown measures arising from the confirmed COVID-19 case. The recent confirmed COVID-19 case simply illustrates the need for more transparency and access to putative class members, not less.

**Respondents' Position:**

As discussed above, MDOC, the Maine CDC, and Wellpath are taking immediate action to stop the spread of COVID-19 in prison, including 200 additional tests the day the positive result was confirmed and more testing today. Petitioners cite no authority for them to interfere in the State's response to this emergency. They have moved for a preliminary injunction, which the Court will determine how to adjudicate. They are not entitled to immediate relief, ex parte, by requesting it in a joint status update, nor have they provided any basis on which this Court has the authority to order "universal testing" or any relief other than habeas corpus.

Habeas corpus relief does not allow for the Court to issue an order dictating conditions of confinement, which would be the proper remedy for a section 1983 claim (and which, in turn, would be subject to the Prison Litigation Reform Act's limits on injunctive relief, found at 18 U.S.C. § 3626). In other jurisdictions, petitioners challenging correctional responses to COVID-19 have filed both a habeas petition and section 1983 action, but that is not what Petitioners have done here. In a habeas petition, Petitioners cannot obtain an order against the Commissioner "mandating compliance with U.S. Centers for Disease Control and Prevention (CDC) guidance including adequate physical distancing and necessary hygiene[.]" (PI Mot. (ECF No. 5) p. 3.) The case law has "establish[ed] that a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life" rather than the fact or length of his custody. *Preiser v. Rodriguez*, 411 U.S. at 499 (1973). A suit "for declaratory and injunctive relief, in sum, is not a habeas petition[,]" and "[t]he Suspension Clause protects '[t]he Privilege of the Writ of Habeas Corpus,' not requests for injunctive relief." *Jennings v. Rodriguez*, 138 S. Ct. 830, 858 (2018) (Thomas and Gorsuch, JJ., concurring in part and dissenting in part) (citing *United States v. Jung Ah Lung*, 124 U.S. 621, 622 (1888) (describing habeas relief as "order[ing] the discharge from custody of the person in whose behalf the writ was sued out"); *Chin Yow v. United States*, 208 U.S. 8, 13 (1908) (awarding habeas relief by ordering the release of the alien if certain conditions were not satisfied)). Petitioners must seek an order regarding altered conditions of confinement in a section 1983 suit, and at the very least by motion, not in a joint status report.

The State's interest in managing its prisons without undue interference, especially during an emergency, is paramount, and is recognized by the Supreme Court. "The relationship of state prisoners and the state officers who supervise their confinement is far more intimate than that of a State and a private citizen[,]" and "[s]ince these internal problems of state prisons involve issues

so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems." *Preiser,* 411 U.S. at 492. It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons." *Id.* at 491-92.

## IV. Bifurcation of Procedural Challenges and the Merits

**Petitioners' Position:** Counsel for Petitioners understands that Respondents seek to bifurcate their response by separating briefing on procedure and jurisdiction, from briefing on the merits of the claim. Petitioners oppose bifurcation and request a briefing schedule in response to the motion for preliminary injunction that (as is typical) combines arguments on procedure and the merits. Bifurcation of briefing would delay resolution on the merits, and, as such, is inappropriate given the emergency nature of this proceeding.

Additionally, the degree of detail in the Respondents' status update demonstrates that they are able to move quickly in marshaling procedural and substantive arguments in their favor. Such rapid action and briefing is needed, especially now that the recent positive test confirms that COVID-19 has infiltrated at least one facility. Given the impossibility of physical distancing, the unavailability of alcohol-based hand sanitizer, and the insufficiency of other hygiene measures, as alleged in the petition, the recent positive test simply confirms the imminent and deadly harm faced by members of the putative class. Bifurcating the briefing to take double the time before there is any hope of reaching the merits, would make little sense in the face of this emergency.

Finally, Respondents' status update below delves into their exhaustion arguments in some detail and would be best addressed in expedited briefing. To provide a brief response: None of Respondents' arguments undermine the applicability of 28 U.S.C. § 2241 in this case. As

described in the case cited by Respondents, "Section 2241 . . . does not contain many of the hurdles that [28 U.S.C.] § 2254 places before habeas petitioners, [and] may be used to attack the manner in which a sentence is executed, as opposed to the sentence itself." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 876 n.9 (1st Cir. 2010) (citing *Muniz v. Sabol,* 517 F.3d 29, 33–34 (1st Cir. 2008)). Petitioners have never disputed that section 2241 contains a judge-created exhaustion requirement, as described in *Gonzalez-Fuentes*. But futility is an exception to the exhaustion requirement even under section 2254, and here, as described in Petitioners' motion, it would be futile for Petitioners to seek emergency class habeas relief in state court. *See* Pets. Mot. for TRO and Preliminary Injunction at 10-11, ECF No. 5. Respondents do not (and cannot) dispute that emergency class habeas relief is unavailable in the state courts.[1]

**Respondents' Position:**

As discussed with the Court on May 18 and acknowledged in the petition, federal habeas petitioners must satisfy an exhaustion requirement.[2] Other threshold doctrines, such as *Younger* abstention, may also bar Petitioners' claims. Respondents request that briefing on these threshold issues come first.[3] A bifurcated approach to briefing is warranted here both because of the strong

---

[1] Although later facts show that the State court has taken some action, the State court did not docket or respond to Mr. Denbow's emergency motion for bail or emergency motion for a hearing on bail. *See* Docket, *Denbow v. State* (attached). The orders that were issued were not docketed under May 20, 2020, five weeks after filing.

[2] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999): (Under 2254(b)(1),(c), "federal habeas relief is available to state prisoners only after they have exhausted their claims in state court."); *Preiser v. Rodriguez*, 411 U.S. at 477 (1973) ("If . . . habeas corpus is the exclusive federal remedy in [the] circumstances, then a plaintiff cannot seek the intervention of a federal court until he has first sought and been denied relief in the state courts, if a state remedy is available and adequate.") (citing 28 U.S.C. § 2254(b)). "The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Preiser*, 411 U.S. at 492.

[3] Rule 4 of the Rules Governing § 2254 Cases and § 2255 Proceedings in the District Court expressly contemplates that the presiding judge in a § 2254 case may order the respondent to respond to a petition by "motion" instead of by answer. *See Ruff v. Jackson*, No. 1:04CV014, 2005 WL 1652607, at *1 (S.D. Ohio June 29, 2005), report and recommendation adopted, No. C-1-04-14, 2005 WL 1719112 (S.D. Ohio July 22, 2005) (observing that it is "well within the discretion of the court to permit and consider a response [to a § 2254 petition] in the form of a motion to dismiss"); *see also Lopez v. Ndoh*, No. 116-CV-00111, 2016 WL 3418432, at *1 (E.D. Cal. June 22, 2016) (recognizing the propriety of a motion to dismiss a § 2254 petition under Rule 4 for failure to exhaust).

likelihood that Plaintiff's claims are barred in light of the ongoing state-court proceeding and because requiring MDOC officials and MDOC's medical provider (Wellpath) to respond immediately to the substance of Petitioners' factual allegations may unnecessarily interfere with their efforts to address the current emergency created by the COVID-19 pandemic.

Respondents thus propose to file a motion to dismiss the petition within 10 days. Petitioners would have 10 days to oppose, and Respondents would have 7 days to file a reply. If granted, that motion would be dispositive of the petition. If denied, Respondents propose filing an opposition to the motion for preliminary injunction within 14 days of the order on the motion to dismiss. Petitioners would have 7 days to file a reply.

As noted above, the likelihood that the petition is barred for failure to exhaust is high. Because petitioners are "person[s] in custody pursuant to the judgment of a state court," their habeas petition is subject to the exhaustion requirements of 28 U.S.C. § 2254. Subsection (b) of that provision requires that "the applicant has exhausted the remedies available in the courts of the State" unless "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant." Moreover, under subsection (c), "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

Given Mr. Denbow's current petition in the Superior Court for post-conviction review, it is clear that petitioners have "the right . . . to raise . . . the questions presented" in this case in a State court and thus have not exhausted, which failure is evident from the face of the petition.

---

Respondents thus propose that the Court order that they be permitted to respond to the Petition with a motion to dismiss prior to any briefing on the substance of the claims.

Because this issue is determinative of the entire petition, Respondents believe it should be decided first, before briefing or affidavits on the factual assertions in the petition.

Petitioners take the position that, despite its unambiguous language, the requirements of § 2254 do not apply to this proceeding because Petitioners are challenging the "execution" of their sentences under 28 U.S.C. § 2241. But the First Circuit has squarely rejected that proposition. In *Gonzalez-Fuentes v. Molina*, 607 F.3d 864 (1st Cir. 2010), which considered a habeas challenge by commonwealth prisoners involving their eligibility for a tracking-anklet release program, the First Circuit applied requirements of § 2254 to the petitioners, even though petitioners had filed their petition under § 2241 as well as § 2254. *Id.* at 875–876 & n.9. Recognizing a circuit split on the question, the court expressly joined the majority view that "prisoners in state custody are required to comply with all the requirements laid out in § 2254 whenever they wish to challenge their custodial status, *no matter what statutory label the prisoner uses*." *Id.* at 875 n.9 (emphasis added). The applicability of § 2254 to this action is thus settled law in this circuit.

Petitioners' motion makes no attempt to distinguish *Gonzales-Fuentes*. Indeed, the only decision Petitioners cite that directly supports their position is a flawed out-of-circuit decision that relied on precedent interpreting 28 U.S.C. § 2255, a narrower and otherwise distinguishable provision that governs habeas petitions by *federal* prisoners. *See McPherson v. Lamont*, No. 3:20-cv-534, 2020 WL 2198279, at *4 (D. Conn. May 6, 2020). In short, Petitioners are highly unlikely to succeed on their argument that § 2254's restrictions do not apply to them. Given the apparent unlikelihood, based on the facts now in the record, that Petitioners can overcome those restrictions, the Court should consider these threshold issues first.

**V. Proposed Briefing Schedule**

**Petitioners' Position:** The recent positive case at the Maine Correctional Center makes it all the more important to expedite proceedings on this case. With that in mind, Petitioners respectfully request the following briefing and oral argument schedule:

- Monday, May 25, 2020: Respondents file their response in opposition to the Petitioners' motion for preliminary injunction;
- Wednesday, May 27, 2020: Petitioners file their reply in support of the preliminary injunction
- Friday, May 29, 2020: Telephonic oral argument

Given the need for expeditious action, Petitioners propose fact finding on the basis of the written record, with oral argument to help address any questions the Court may have on the facts and the law.

**Respondent's Position**:

As discussed above, Respondents propose to file a motion to dismiss the petition (on exhaustion and other applicable legal bases) within 10 days. Petitioners would have 10 days to oppose, and Respondents would have 7 days to file a reply. If such a motion is denied, Respondents propose that they oppose the motion for preliminary injunction within 14 days of the order on the motion to dismiss. Petitioners would then have 7 days to file a reply. At that point, the Court would be able to determine if it could rule on the preliminary injunction motion on the papers (as was done in *Cavalry*, D. Me. 1:20cv156-NT, Order issued May 9, 2020), or if oral argument or an evidentiary hearing (remote or in person) are necessary.

## VI. Discovery

**Petitioners' Position:** Petitioners require access to information in DOC's custody, including: (1) the names of putative class members, including putative class members who have

been tested for COVID-19, (2) protocols, policies, and practices to respond to COVID-19, and (3) communications between DOC and the Maine Centers for Disease Control and Prevention (CDC). There is good cause for requiring the sharing of this information, and, given the rapidly evolving situation and the life-or-death nature of the harm facing Petitioners and putative Class Members, transparency between parties and with the Court is essential.

Petitioners would be happy to negotiate with DOC regarding the terms of a protective order to protect any medical information about specific prisoners or members of the putative class.

**Respondents' Position**: Because this is a federal habeas petition, discovery is strictly limited by Rule 6 of the Federal Rules Governing Section 2254 Cases and Section 2255 Proceedings.[4] Those rules state that the judge "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." (Rule 6.)

Respondents do not believe good cause exists to allow discovery and depositions, which Petitioners indicated they also want. Respondents note that since April 13, when Mr. Denbow filed for post-conviction relief in state court, as part of MDOC's attempts to informally negotiate with counsel for Mr. Denbow and Mr. Ragsdale, counsel for Respondent has already provided nearly 500 pages of material to counsel for Petitioners, including the policy regarding Supervised Community Confinement and copious material related to Mr. Denbow and Mr. Ragsdale, such as information regarding their applications for Supervised Community Confinement.

[4]Available at ww.uscourts.gov/sites/default/files/rules_governing_section_2254_and_2255_ cases_in_the_u.s._district_courts_-_dec_1_2019.pdf.

If the Court is inclined to permit discovery regarding absent putative classmembers before an order on class certification, Respondents request an opportunity to brief the issue and contend that it should be limited to the named plaintiffs, whose role is to represent the class.

## VII. Motion for Class Certification

**Petitioner's Position**: The Court has authority to provide provisional relief for the putative class, even before formal certification, as explained in the motion for preliminary injunction. To continue to expedite matters, Petitioners also plan to file a motion for class certification by Friday, May 22, 2020.

In describing their position below, Respondents have included a great deal of substantive material that is better addressed in responsive pleadings. Suffice it to say that, as in other cases regarding prison responses to COVID-19, all members of the class "members have been subjected to dangerous conditions in which they run a high risk of exposure to the deadly COVID-19 virus." *Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 1940882, at *7 (N.D. Ohio Apr. 22, 2020); *see also Martinez-Brooks v. Easter*, No. 3:20-CV-00569 (MPS), 2020 WL 2405350, at *30 (D. Conn. May 12, 2020) (holding that the Warden's implementation of her home confinement and compassionate release authority "violates the constitutional rights of medically vulnerable inmates [and is] is plainly 'applicable on behalf of the entire [subclass]' and 'uncluttered by subsidiary issues.'").

**Respondents' Position**: There is no provision in the federal habeas rules allowing for class certification, and the individual issues that would predominate are endless: individual medical condition(s) and status, level of criminal offense, victims that must be notified before release, custody level, level of dangerousness, whether the inmate can be released on supervised community confinement (e.g. has a stable home for release and a plan for probation to adequately

supervise the inmate). These factors make class relief impossible as a practical matter. The two named petitioners (Mr. Ragsdale and Mr. Denbow) reported to their caseworkers that they do not have a home to be released to on supervised community confinement. MDOC will not release inmates during this pandemic if they do not have stable housing. This would violate the Supervised Community Confinement Program policy and greatly increase the risk of exposure to COVID-19 for those inmates and those they would come into contact with in the community. Petitioners' requests also violate the Governor's Executive Order requiring Maine residents to stay where they are, at home. (Executive Order 49.)

Even if the Court wishes to hear argument on the possibility of class certification, Petitioners' plan to move for class certification on Friday, May 22, is unreasonable, given that the case was filed on May 15, 2020, and given that the Court has not yet determined the appropriate course of the proceedings. Respondents propose that class certification briefing (if allowed) be conducted after the Court rules on the anticipated motion to dismiss and Petitioners' motion for preliminary injunction.

Dated May 20, 2020

Respectfully Submitted,

/s/ Emma E. Bond
Emma E. Bond, Esq.
Zachary L. Heiden, Eq.
American Civil Liberties Union of Maine Foundation
P.O. Box 7860
Portland, Maine 04112
(207) 619-8687
*ebond@aclumaine.org*
(207) 619-6224
*heiden@aclumaine.org*

Moe Keshavarzi*
Robert Sturgeon*
Alex Kuljis*
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.617.5544
*MKeshavarzi@sheppardmullin.com*
213-617-5435
*RSturgeon@sheppardmullin.com*
213-617-4239
*AKuljis@sheppardmullin.com*

Jodi Nofsinger
Miriam Johnson
Taylor Asen
Berman and Simmons
129 Lisbon Street
Lewiston, Maine 04240
*jnofsinger@bermansimmons.com*
(207) 784-7699
*mjohnson@bermansimmons.com*
(207) 784-3576
*tasen@bermansimmons.com*

**Attorneys for Petitioners and Proposed Class**

* admitted pro hac vice

AARON M. FREY
Attorney General

May 20, 2020

/s/ Jillian R. O'Brien
Jillian R. O'Brien, Bar No. 6225
Assistant Attorney General
*jill.obrien@maine.gov*
Alisa Ross, Bar No. 4688
Assistant Attorney General
alisa.ross@maine.gov
Jonathan R. Bolton, Bar No. 4597
jonathan.bolton@maine.gov
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800

**Attorneys for Respondents**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2020, I electronically filed the above document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

May 20, 2020

/s/ Jillian R. O'Brien
Jillian R. O'Brien, Bar No. 6225
Assistant Attorney General
*jill.obrien@maine.gov*