## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH A. DENBOW et al.,<br><br>          Petitioners,<br><br>     v.<br><br>MAINE DEPARTMENT OF<br>CORRECTIONS et al.,<br><br>          Respondents. | Docket No. 1:20-cv-00175-JAW<br><br>**RESPONDENTS' MOTION TO<br>DISMISS AND INCORPORATED<br>MEMORANDUM OF LAW** |

### Motion to Dismiss

Under Rule 5 of the Rules Governing § 2254 Cases (the "Habeas Rules"),[1] Respondents

Maine Department of Corrections and Commissioner Randall Liberty (together, "MDOC") move

to dismiss the petition for the writ of habeas corpus filed by state inmates Joseph Denbow and

Sean Ragsdale ("Petitioners") on behalf of the putative classes, on the basis that Petitioners failed

to exhaust administrative remedies as required by 28 U.S.C. § 2254(b) and (c).

### Introduction

Section 2254 provides "a simple and clear instruction to potential litigants: before you

bring any claims to federal court, be sure that you first have taken each one to state court." *Rhines*

*v. Weber*, 544 U.S. 267, 276-77 (2005) (quoting *Rose v. Lundy*, 455 U.S. 509, 520 (1982)).

Ignoring this instruction is "fatal to the prosecution of a habeas petition." *Jackson v. Coalter*, 337

F.3d 74, 85-86 (1st Cir. 2003) (cleaned up); *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988).

---

[1] Should the Court conclude that the Habeas Rules are inapplicable, Respondents alternatively
move under Fed. R. Civ. P. 12(b)(6).

1

There is no question that the two named petitioners here have not yet exhausted state-court remedies. Section 2254(c) provides that petitioners "shall not be deemed to have exhausted . . . if [they have] the right under the law of the State to raise, by any available procedure, the question presented." Here, both men could bring a state court petition for post-conviction review ("PCR"), and in fact, Mr. Denbow has. That action is proceeding expeditiously, with a bail hearing set for June 24, 2020. Other state-court remedies are potentially available too: Petitioners could have filed a petition for a state-law writ of habeas corpus under 14 M.R.S. § 5501, a request for judicial review of a final agency action under 5 M.R.S. § 11001 and M.R. Civ. P. 80C, or a motion to correct their sentences under M.R.U. Crim. P. 35. These "available procedures" mean that Petitioners have not exhausted their claims. 28 U.S.C. § 2254(c).

Nor can Petitioners meet their heavy burden of establishing either of the two statutory exceptions to exhaustion: that "there is an absence of available State corrective process" or that "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i) & (ii). Instead, the evidence shows that the Superior Court in Petitioner Denbow's case is moving forward, that the state courts have been available throughout the pandemic to expeditiously hear emergency cases and are increasingly back to normal operations, and that no state inmates besides Denbow have even tried to present COVID-19-related claims in state PCR proceedings. Petitioners thus cannot show that exhaustion is excused because state processes are "absent" or "ineffective."

Because Petitioners cannot meet their burden of showing that these state court procedures are unavailable, this Court should dismiss the petition under § 2254(b) and (c). In addition, given that the Superior Court is presently adjudicating Mr. Denbow's nearly identical petition for post-

conviction review, this Court should abstain from hearing his case under *Younger v. Harris*, 401 U.S. 37, 45 (1971), and should dismiss Petitioner Denbow from the suit.

**Facts**

### I.    Background.

Petitioners Denbow and Ragsdale brought a putative class habeas petition on May 15, 2020, on behalf of a class of "medically vulnerable" inmates and three subclasses. (Pet. ¶¶ 63, 67 (ECF No. 1).) Petitioners moved for a TRO or preliminary injunction on May 18, 2020. (ECF No. 5.) Mr. Denbow is serving a sentence for two counts of operating after habitual offender revocation and aggravated forgery,[2] and he is due to be released at the end of his sentence on August 28, 2020.[3] (State's Resp. to Pet. 1 p. 1 (Ex. A); Prisoner/Probationer Search for Mr. Denbow, https://www1.maine.gov/cgi-bin/online/mdoc/search-and-deposit/detail.pl?mdocnumber1=33030 (last viewed June 20, 2020).) Mr. Ragsdale is serving a sentence for two counts of aggravated trafficking of scheduled drugs, and is due to be released at the end of his sentence on July 13, 2020. (Prisoner/Probationer Search for Mr. Ragsdale, https://www1.maine.gov/cgi-bin/online/mdoc/search-and-deposit/detail.pl?mdoc_number1=126457 (last viewed June 20, 2020).)

---

[2] The petition claims that Mr. Denbow is in prison for aggravated forgery because he "initially g[ave] the traffic officer his brother's name instead of his own" during a traffic stop. (Pet. ¶ 14.) But this description of his offense not consistent with a conviction for aggravated forgery, which requires falsely making, completing, endorsing, or altering one of several kinds of "written instrument[,]" including records "to be filed in or with a public office[.]" 17-A M.R.S. § 702(1).

[3] These dates are the earliest possible release dates, due to those inmates' monthly good time credits, which they may or may not earn for the time remaining on their sentence, based on disciplinary actions and other factors.

## II.     The Superior Court Is Adjudicating Petitioner Denbow's Petition for Post-Conviction Review.

On April 13, 2020, Petitioner Denbow, through the same counsel representing him in this case (ACLU of Maine), filed an Emergency Petition for Post-Conviction Review ("PCR") by e-mailing it to the Oxford County Clerks' Office under PMO-SJC-3. (Ex. B, Pet.) Petitioner Denbow also filed by e-mail a supporting memorandum of law, as well as an Emergency Motion for Release on Bail and Leave to File an Unsworn Petition. (Ex. C, *Joseph Denbow v. State of Maine*, Docket Record, OXFCD-CR-2020-00226; Ex. D, Mem. of Law; Ex. E, Mot. for Release on Bail.)[4] In his state court petition, Denbow makes the same claims he is making in this action, but under both the U.S. and Maine Constitutions. (Ex. B at 3; Ex D. at 2-8.) He asserts that his criminal sentence is unconstitutionally disproportionate to his offense and that his continued incarceration constitutes cruel and unusual punishment due to the threat of COVID-19. (*Id.*) In an order dated April 23, 2020, Justice William Anderson of the Maine Superior Court ordered the State to file a response to the petition. (Ex. F.) Also on April 23, Petitioner Denbow filed an Emergency Motion for Hearing on Post-Conviction Bail (for which briefing was complete on April 29). (Ex. G, H, and I.) Chief Justice Mullen assigned the petition to Justice Cole on April 24, 2020. (Ex. J.) The parties received these orders on May 18, due to a clerical error. (Ex. K, emails from Oxford County Superior Court Clerk Michelle Racine.)[5] On May 19, Chief Justice Mullen assigned Justice McKeon to handle the proceedings. (Ex. L.)

---

[4] In contrast with Fed. R. Civ. P. 12(b)(6), the Habeas Rules do not prevent the Court from considering evidence extrinsic to the complaint in deciding a motion to dismiss for failure to exhaust. In any event, even in the Rule 12(b)(6) context, a court may properly consider court filings of undisputed authenticity, as well as other matters subject to judicial notice. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020) (matter subject to judicial notice); *Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2198876, at *3 (D. Me. July 26, 2007) (court orders, judgments, and other "matters of public record").

[5] The clerical error may have related to the fact, as admitted by Petitioner Denbow, that "some of [Petitioner Denbow's] motions may have been filed in the docket numbers for Mr. Denbow's underlying

On June 5, 2020, the State filed a response to Denbow's petition (electronically and by overnight mail) and simultaneously moved to dismiss the petition for failure to exhaust administrative remedies within MDOC, as required by 15 M.R.S. § 2126. (Ex. A.)[6] Petitioner Denbow's counsel opposed the motion to dismiss on June 15. (Ex. M.)

On June 17, the court held a telephonic conference under M.R.U. Crim. P. 72A(a). During that phone conference on June 17, Justice McKeon ordered the State to file a reply in support of the motion to dismiss by June 26. Petitioner Denbow requested a deadline of July 10 to move to amend his petition to assert class allegations. Justice McKeon indicated he would likely set a deadline for moving to amend sooner than July 10. Justice McKeon also ordered Petitioner Denbow to file a request for an evidentiary hearing, if Denbow believes a hearing is necessary, which Justice McKeon anticipated would likely occur in September 2020. Following the conference, the court scheduled a bail hearing for Mr. Denbow for June 24, 2020.

Respondents' investigation indicates that no state inmates other than Mr. Denbow have attempted to avail themselves of the state-court PCR process to address COVID-19-related conditions of confinement. The Office of the Attorney General (OAG), which sometimes represents the State in such proceedings, is handling no such cases. (Decl. of Lisa Marchese, dated June 22, 2020, ¶ 12.) Moreover, the OAG polled the various District Attorneys—whose offices handle the remainder of such cases—and learned of only one additional COVID-19-related case,

_____

criminal dockets, OXFCD-CR-2018-00300, and OXFCD-CR-2018-00600." (Renewed Mot. for Bail and Opp. to Mot. to Dismiss State Pet. (Ex. M) at 2 n. 2.)

[6] At the State's request, the Superior Court impounded Exhibit A to that response (Mr. Denbow's criminal history) and certain lines in the supporting affidavits filed by the State, to protect Petitioner Denbow's privacy. Respondents are filing with this Court the redacted versions of the affidavits, but are not filing the criminal history, because it is not necessary for deciding the motion to dismiss. (*See* Ex. A.)

which involves a probationer in the community who filed a case on June 4. (Marchese Decl. ¶¶ 5, 7-11.)

### III.    State Court Procedures Are Available to MDOC Inmates.

As evidenced by the progress of Mr. Denbow's state-court case, the state courts remain open and available to litigants. Beginning in March 2020, the Maine Supreme Judicial Court issued emergency Pandemic Management Orders ("PMOs") to respond to COVID-19, which have been periodically updated. Those orders limited the case types that would be routinely scheduled and heard, with later orders incrementally increasing the number of case types that would be scheduled. (Ex. N, PMO-SJC-1; Ex. O, State of Maine Judicial Branch, COVID-19 Phased Management Plan ("PMP") at 1.) From the start of the pandemic, the Supreme Judicial Court's emergency order allowed the hearing of motions for review of bail for defendants held in custody and criminal matters "related to the incarceration of a defendant." (Ex. N, PMO-SJC-1.) The orders also provided that a case of a type not being routinely heard could still be scheduled and heard upon a showing of "urgent and compelling reasons." *Id.*

By May 2020, virtually all case types and proceedings could be heard without the need to show urgent and compelling reasons. *See* Ex. P, May 6, 2020 Press Release ("Effective immediately, and continuing through May 30, 2020, the courts may schedule and hear virtually all case types and proceedings so long as all hearings, conferences, and other court events take place only by video or audio conference."); *see also* Ex. O, PMP (noting that recent PMOs provide for hearing of almost all case types provided that the case can be addressed by video or telephone and that judicial resources will be directed to priority case types first).

On May 27, 2020, the Maine Judicial Branch issued a detailed five-phase approach for the resumption of all functions of the Maine state courts by September 7. (Ex. O, PMP.) This plan makes clear that state courts will continue to schedule and hear matters relating to persons held in

custody. (*Id.* at 4.) Under the plan, state courts may "schedule and hear all other case types and proceedings so long as all hearings, conferences, and other court events take place only by video or audio conference." (*Id.* at 5.) A party may still request that a matter be heard or scheduled by the Superior Court. (*Id.* at 6.) The plan envisions a return to all activities by September 2020. (*Id.* at 11.) Effective Monday, June 1, 2020, Maine courthouses were open from 8 a.m. to 4 p.m., Monday through Friday, with visitor restrictions for entrants. (*Id.* at 3, 14-15.)

Although there appear to be no other state-court inmate cases like Mr. Denbow's, Maine courts have moved quickly in other types of cases since the start of the pandemic. For example, a case challenging the Secretary of State's ratification of a direct initiative petition followed a breakneck schedule in which the Superior Court adjudicated a challenge to an April 1 administrative decision by April 13, with the Law Court deciding the resulting appeal by May 7, 2020. *See Reed v. Sec'y of State*, 2020 ME 57, ¶¶ 8-11 & n.6, __ A.3d __. Similarly, in an action to enjoin a citizen initiative, *Avangrid Network, Inc. v. Secretary of State,* CV-20-206, Justice Warren, on May 22, 2020, set a schedule that contemplated a merits resolution by June 29, 2020. (Ex. Q, Scheduling Order.) And, a challenge to a people's veto petition, *Payne v. Secretary of State*, Docket No. KEN-20-169, is currently proceeding in the Law Court on an expedited basis.[7]

Within MDOC facilities, prison mail (including legal mail) has proceeded normally. (Decl of Dr. R. Thornell in Supp. of Mot. to Dismiss, ¶ 5.) The only change in prison mail during the COVID-19 pandemic has been for inmates on quarantine status, whose mail is held until after the two-week quarantine due to the potential for transmitting COVID-19. (*Id.*) Moreover, MDOC

---

[7]       The Order establishing the expedited course of appeal is posted at https://www.courts.maine.gov/news_reference/high_profile/rankedchoice2020/order_course_of_appeal.pdf (last visited June 21, 2020).

facilities have taken steps to ensure prisoners can continue to access to legal materials. (*Id.* ¶¶ 8-10.)

## Legal Standard

Habeas relief to an inmate in state custody "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Subsection (c) of § 2254 states that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." This strict exhaustion requirement is grounded in principles of federal-state comity, which counsel that federal courts "will interfere with the administration of justice in the state courts only 'in rare cases where exceptional circumstances of peculiar urgency are shown to exist.'" *Rose*, 455 U.S. at 515-16 (quoting *Ex parte Hawk*, 321 U.S. 114, 117 (1944)). Moreover, because § 2254's exhaustion requirement is codified in statute, federal courts have no "judicial discretion" to excuse exhaustion except as the statute specifically allows. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (addressing exhaustion under Prison Litigation Reform Act).

Federal courts enforce the exhaustion requirement "consistently and rigorously," with few exceptions. *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir. 1997). The First Circuit has "made no bones about the fact that a failure to exhaust ordinarily is 'fatal' to the prosecution of a habeas petition." *Jackson v. Coalter*, 337 F.3d 74, 85-86 (1st Cir. 2003) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)).

There are two "escape hatches" from § 2254's exhaustion requirement. (Order on Mot. for TRO (ECF No. 25) at 40.) State exhaustion is not required if the federal petitioner has demonstrated that "there is an absence of available State corrective process" or if "circumstances

8

exist that render such process ineffective to protect the rights of the applicant." (*Id.* (citing 28 U.S.C. § 2254(B)(1)(i-ii)).) The latter situation requires a showing that the relevant state-court process is "so clearly deficient as to render futile any effort to obtain relief." *Gagne v. Fair*, 835 F.2d 6, 9 (1st Cir. 1987) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam)).

The burden is on petitioner to demonstrate exhaustion or an exception. *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002); *accord Buchanan v. O'Brien*, 181 F.2d 601, 605 (1st Cir. 1950) (holding that the burden was on petitioner to show exhaustion under § 2254 "[b]efore a federal court may exercise the delicate jurisdiction of interfering with state criminal processes"). And it is a "heavy burden," requiring petitioner to establish that he "fairly and recognizably presented to the state courts the factual and legal bases of this federal claim." *Adelson*, 131 F.3d at 262; *accord Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011); *Barresi*, 296 F.3d at 51.

## Argument

### I.       The Petition is Barred for Failure to Exhaust.

As discussed in the Court's order denying Petitioners a TRO, the First Circuit follows the majority view that § 2254 governs all habeas petitions by inmates in custody pursuant to a state court judgment, including those styled as petitions under 28 U.S.C. § 2241. (Order on Mot. for TRO at 38); *see Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 875 n.9 (1st Cir. 2010); *Brennan v. Wall*, 100 Fed. App'x 4 (1st Cir. 2004). Thus, it is settled law in the First Circuit that § 2254's rigorous statutory exhaustion requirement—and not the flexible judge-made exhaustion requirement of § 2241 preferred by Petitioners—applies in this case. *Gonzalez-Fuentes*, 607 F.3d at 875 n.9; *see Elleby v. Smith*, No. 20 CIV. 2935, 2020 WL 2611921, at *4 n.3 (S.D.N.Y. May 22, 2020) (contrasting § 2254 statutory exhaustion requirement, which barred COVID-19-related petition, with "judge-made" § 2241 exhaustion requirement).

Petitioner Denbow has a pending petition for post-conviction review in the Superior Court on the same claims he brings before this Court and thus very much "has the right to raise" the "question presented" in "the courts of the state" and is thus barred by § 2254(c). (Ex. B.) In contrast to Petitioner Denbow, Petitioner Ragsdale has not even attempted to invoke state judicial processes to challenge his confinement. (Marchese Decl. ¶¶ 7-12; *see also* Ragsdale Decl. (ECF No. 1-3); Pet. (ECF No. 1) at 43.) "[I]t is rather incongruous to call an otherwise available process unnecessarily time-consuming or futile when one has made no effort to initiate it." *Mays v. Dart*, No. 20-C-2134, 2020 WL 1812381, at *6 (N.D. Ill. April 9, 2020); *see also Wilson v. Wells*, No. 3:17-CV-40, 2017 WL 6667515, at *2 (D. Conn. Sept. 6, 2017) (declining to convert complaint into § 2254 petition where petitioner failed to allege any efforts to exhaust state-court remedies). In short, there can be no dispute that neither petitioner has exhausted his state-law remedies under § 2254(b) and (c). Thus, the only way for Petitioners to overcome the exhaustion requirement is to demonstrate that one of § 2254's two exceptions to exhaustion applies to their claims. They will be unable to carry their "heavy burden" to do so. *Barresi*, 296 F.3d at 51.

### A.    State Court Remedies Are Available and By No Means Futile.

#### 1.    *Mr. Denbow's State Court Proceeding Is Not Futile.*

Petitioners previously took the position that § 2254's exhaustion exception applies here because Mr. Denbow's PCR petition allegedly "languished" for "over five weeks" in the Superior Court. (Mot. for P.I. (ECF No. 5) at 10.) It has since become clear, however, that this assertion was incorrect. As counsel for both parties belatedly (due to a clerical error) learned, Mr. Denbow's petition was specially assigned to a justice on April 24, 2020, shortly after it was filed, and the State had been ordered to respond to the petition within 21 days of receipt of the order. Although the clerical error delayed the State's response deadline by a few weeks, the State did respond on June 5, 2020, and the case is now moving forward expeditiously.

A clerical error, unlikely to be repeated, that delayed the state-court proceeding by a few weeks does not come close to showing that the state court processes are "so clearly deficient" as to be "futile." *Gagne*, 835 F.2d at 9. Mere passage of time is not sufficient to establish futility except the most egregious circumstances. *See Mercer v. Warden*, No. 98-315-P-H, 1999 WL 33117092, at *3 (D. Me. Feb. 4, 1999) (declining to excuse exhaustion despite "troublesome" three-year delay in state-court proceedings), *report and recommendation aff'd* (Feb. 24, 1999); *St. George v. Dist. Attorney of Cty. of Philadelphia*, 529 F. App'x 226, 228 (3d Cir. 2013) ("regrettable delay" in state court proceeding did not excuse exhaustion where delay "has not rendered the state remedy ineffective"); *Malloy v. Dist. Attorney of Montgomery Cty.*, No. CV 20-1804-JMY, 2020 WL 2571170, at *3 (E.D. Pa. May 21, 2020) (two-month COVID-19-related delay in state-court proceedings insufficient to excuse exhaustion); *cf. Story v. Kindt*, 26 F.3d 402, 406 (3d Cir. 1994) (excusing exhaustion after eleven-year delay in state-court proceeding caused by state court's "inability to manage its own docket").

Here, after a brief delay, the state court proceeding is moving forward swiftly. The Superior Court is holding a bail hearing on June 24, 2020, and will be adjudicating the State's motion to dismiss the petition after a reply is filed on June 27, 2020. An evidentiary hearing, if Petitioner Denbow seeks one, would likely occur in September 2020. Particularly in light of MDOC's exemplary track record in keeping COVID-19 almost entirely out of MDOC facilities,[8] the state court's scheduling decisions are entirely consistent with the urgency of Mr. Denbow's claims.

Given these facts, the state court proceeding cannot be shown to be "futile." *Gagne*, 835 F.2d at 9. The Court should thus "defer action on a cause properly within its jurisdiction until the

---

[8] *See* ECF No. 20, Thornell Declaration, dated May 27, 2020, ¶ 55 (stating that MDOC has had only four positive inmate cases, in a single facility, since the start of the pandemic).

11

courts of another sovereign with concurrent powers, already cognizant of the litigation, have had

an opportunity to pass upon the matter." *Scarpa v. Dubois*, 38 F.3d 1, 6 (1st Cir. 1994) (citing

*Rose*, 455 U.S. at 518). Because Petitioners have not given the state court a chance to rule on Mr.

Denbow's claims, this Court should dismiss the petition without prejudice.

> 2.   *Petitioners Cannot Show that Maine Courts Generally Are Incapable of Adjudicating COVID-19-Related Claims Brought by Class Members.*

Petitioners also claim that "exhaustion is futile for proposed Class Members, because

requiring each class member to individually petition the state court would burden the limited

judicial resources during this emergency and cause further delay." (Pet. (ECF No. 1) ¶ 95.) But the

state courts would clearly not be overburdened by petitions by the two named class members.

Whether state courts would be overburdened if every single putative class member filed a state-

court action is not the relevant question and in any event is purely speculative. Respondents'

investigation shows that it appears no other inmate in MDOC custody has even tried to file a

petition for post-conviction review based on COVID-19. (Marchese Decl. ¶¶ 7-12.) There is

simply no reason to think that dismissal of this action would result in a flood of state-court actions

by MDOC inmates or that state courts could not handle such a flood.

As another district court recently explained, although COVID-19 "has had an undeniable

impact on all aspects of society, including delaying many court proceedings," such generalized

facts are not sufficient to excuse exhaustion absent some specific showing by a petitioner that he

"cannot obtain relief" in state court. *Pittman v. Cook*, No. 3:20cv626, 2020 WL 2840256, at * 7

(D. Conn. June 1, 2020) (declining to excuse exhaustion where petitioner never attempted to file

an emergency motion in his state case). In addition to *Pittman*, a growing number of federal courts

have rejected claims by inmates that actual or theorized COVID-19 related roadblocks to a state

court proceeding are sufficient to defeat § 2254's exhaustion requirement.[9] This caselaw is particularly apt where, as described above, Maine courts are well along in the process of returning to normal operations and where state courts have been hearing cases regarding in-custody individuals and other time-sensitive cases.

### 3.    Other State Remedies Besides PCR Are Potentially Available.

Finally, even if PCR proceedings were found to be "ineffective" for some reason, class members have other potential options to present their claims in state court.[10]

State inmates could file a petition for writ of habeas corpus under 14 M.R.S. § 5501, which states, "Every person unlawfully deprived of his personal liberty by the act of another, except in the cases mentioned, shall of right have a writ of habeas corpus" and that this petition "shall be made to any Justice of the Supreme Judicial Court or Superior Court, *regardless whether or not the Supreme Judicial Court or Superior Court is in session*." 14 M.R.S. § 5513 (emphasis added). The Justice may then "hear evidence produced on either side, and if no legal cause is shown for

---

[9] *See Resch v. Rewerts*, No. 1:20-CV-515, 2020 WL 3396625, at *3 (W.D. Mich. June 19, 2020) (exhaustion not excused where petitioner failed to allege circumstances rendering state court remedies ineffective); *Brooks v. Wolcott*, No. 20-CV-0516, 2020 WL 3103795, at *4 (W.D.N.Y. June 11, 2020) ("various state and national orders" allegedly impacting availability of courts did not excuse exhaustion); *Bussinger v. Gramp*, No. CV 20-5600, 2020 WL 2989080, at *2 (D.N.J. June 3, 2020) (exhaustion not excused where petitioner could have sought emergency review of claims in state court); *Griffin v. Cook*, No. 3:20-CV-589, 2020 WL 2735886, at *2 (D. Conn. May 26, 2020) (exhaustion not excused where state courts had previously acted upon another COVID-19-related habeas matter); *Elleby v. Smith*, No. 20 CIV. 2935, 2020 WL 2611921, at *4 (S.D.N.Y. May 22, 2020) (exhaustion not excused where inmates could bring post-conviction proceedings in New York courts and those courts were acting on such requests); *Malloy v. Dist. Attorney of Montgomery Cty.*, No. CV 20-1804, 2020 WL 2571170, at *3 (E.D. Pa. May 21, 2020) (two-month COVID-19-related delay in state-court proceedings did not excuse exhaustion); *Gansert v. Barnes*, No. 820CV00781, 2020 WL 1975387, at *2 (C.D. Cal. Apr. 24, 2020) (order to show cause why exhaustion did not bar claim where prisoner's pending state-court proceeding was filed "a few weeks ago"); *Money v. Pritzker*, No. 20-CV-2093, 2020 WL 1820660, at *21 (N.D. Ill. Apr. 10, 2020) (exhaustion not excused where relevant state court remained open for emergency matters).

[10] In pointing out these potential avenues for state-court relief, Respondents do not suggest that a class member's right to such relief would go uncontested by the State in any such proceeding, nor do they waive (or, for that matter, have any authority to waive) any arguments that the State might have against such relief.

such imprisonment or restraint, the court or justice shall discharge" the individual. 14 M.R.S. §§ 5513, 5516. If the writ is denied, an appeal can be taken to the Law Court. *Id.* § 5513; *see Lamay v. State*, 276 A.2d 603, 605 (Me. 1971) (considering an appeal of the Superior Court's denial of a petition for habeas corpus and holding that a hearing is mandatory "when there are relevant allegations of fact in a petition which, if satisfactorily proved, would entitle the Petitioner to the writ[.]"). Thus, the writ of habeas corpus remains a viable state court remedy for "[e]very person unlawfully deprived of his personal liberty by the act of another." 14 M.R.S. § 5501. A detained juvenile recently used § 5501 to obtain review of his detention in the MDOC juvenile facility in *A.I. v. State of Maine*, Dkt. No. SJC-19-02 (Me. Sup. Jud. Ct. 2019) (opinion attached as Ex. R), which Justice Gorman ruled on, and A.I. appealed. Petitioners could have brought a petition under § 5501, but they have not tried.

In addition to a § 5501 petition, Petitioners could have challenged the denial of their applications for Supervised Community Confinement (or any other final COVID-related action by MDOC) under the Maine Administrative Procedure Act (MAPA), 5 M.R.S. § 11001. In the petition for PCR, Petitioner Denbow recognized the potential for review by a state court under this provision, stating, "To the extent the Court determines that this action challenges administrative action not included in the definition of post-sentencing proceeding, . . . Petitioner respectfully requests that the Court exercise its equitable authority to convert the action into an emergency complaint under [MAPA]." (Mem. of Law in Supp. Emergency Pet. for PCR at 9 n.17 (Ex. D).) That Petitioners could have sought judicial review of a final agency action reflects another available state procedure that Petitioners could have employed.

Finally, Under Criminal Procedure Rule 35, a convicted individual may move to "correct an illegal sentence or a sentence imposed in an illegal manner."[11] Because Petitioners' habeas claims purport to challenge the legality of their criminal sentences, those claims may be cognizable through a Rule 35 motion to correct a sentence. *See State v. Gilman*, 2010 ME 35, ¶ 15, 993 A.2d 14 (vacating a criminal sentence for operating after revocation on appeal of the denial of the State's motion to correct an illegal sentence, and rejecting defendant's arguments that the minimum sentencing provision was unconstitutionally disproportionate and violated his equal protection and due process rights). One inmate at Mountain View has brought a motion to reduce his sentence under Rule 35(c), based on the threat of COVID-19. (Marchese Decl. ¶ 10.)

In short, because class members have multiple state avenues available to them, federal habeas relief is barred by 28 U.S.C. § 2254(c).

### B.   That State Law Regarding Class-Wide Habeas Relief Is Untested Does Not Excuse the Failure to Exhaust.

Petitioners also argue that, because the state criminal procedure rules do not authorize class treatment, they are not subject to the exhaustion requirement. (Mot. for P.I. (ECF No. 5) at 10.) The Court should reject this proposition as a matter of law. Respondents are aware of no case in any jurisdiction supporting the extraordinary proposition that merely including class allegations in a habeas petition could defeat exhaustion, thus creating a huge, easily exploited loophole in an exhaustion requirement that is supposed to be applied "consistently and rigorously." *Adelson*, 131 F.3d at 262. To the contrary, federal courts considering exhaustion in the context of habeas class-

---

[11] While a Rule 35(a) motion must be "made within a year after a sentence is imposed," and is thus arguably only available for a portion of the purported class, Petitioners could presumably argue that the one-year bar should not apply when the factors that make the "sentence imposed in an illegal manner" have only recently arisen. M.R.U. Crim. P. 35(a). As discussed more fully below, that the contours of a state remedy are unclear or untested does not show that they are "unavailable" under § 2254.

actions have required the Petitioners to satisfy exhaustion requirements, including in the COVID-19 context. *Mays*, 2020 WL 1812381, at \*6 (dismissing class-action habeas petition over COVID-19 response where named petitioners failed to exhaust); *Pace v. Chino Inst. for Men*, No. EDCV 09–00841, 2009 WL 2189885, at \*2 (C.D. Cal. July 21, 2009) (finding "no need to consider" whether a § 2254 petition may be brought as a class action where named petitioners failed to exhaust); *Robinson v. Leahy*, 401 F. Supp. 1027, 1032 (N.D. Ill. 1975) (dismissing class action for failure to exhaust under § 2254).

Indeed, Plaintiffs' proposed class-action exception is inconsistent with the very language of § 2254. To excuse exhaustion, subsection (b)(1)(B)(ii) requires the applicant to show that "State corrective process" is "ineffective to protect the rights of the applicant." Even assuming that the "applicant" here includes each putative class member and not just the two named petitioners, the fact that state law might require a particular individual class member to seek state-court relief actively through an individual habeas or PCR action rather than passively as a member of a class in no way makes the State's corrective processes "ineffective" to protect that particular class member's rights. 28 U.S.C. § 2254(b)(1)(B)(ii). Moreover, in a telling indication of congressional intent, § 2254 specifically provides that a petitioner must use "*any* available procedure" to present his claims to the state court in order to exhaust. 28 U.S.C. § 2254(c) (emphasis added). This language strongly suggests that Congress did not intend for federal courts to excuse exhaustion merely because state-court rules did not include the applicant's preferred procedural mechanism for presenting his claims.

Finally, even assuming arguendo that the lack of a class-action mechanism in the state courts might excuse § 2254 exhaustion, Petitioners cannot meet their heavy burden to establish that the unavailability of a class-action remedy in state court is so certain that it would be "futile"

16

for Petitioners to even attempt to seek it. *Gagne*, 835 F.2d at 9; *see also Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) (exhaustion under § 2254 is futile only if a remedy is "so clearly foreclosed by state law" that the federal habeas court can "conclude with certainty" that the remedy is unavailable).

Here, Petitioners have not tried to bring a class petition in state court, or a common law class petition under 14 M.R.S. § 5501. At a telephonic hearing on June 17, 2020, in Mr. Denbow's state post-conviction review proceeding, Justice McKeon stated that he will permit Petitioner Denbow to move to amend his petition to include class claims and will decide on briefs whether to allow amendment.[12] Petitioners undoubtedly have the opportunity to make the case for a class petition before Justice McKeon; they simply have not tried.

As described in Part I.A.3 above, Petitioners and other class members also have other state court processes by which they could attempt to challenge their confinement, including a common law habeas petition under 14 M.R.S. § 5501 or an administrative appeal of an adverse SCCP decision under 5 M.R.S. § 11001 and M.R. Civ. P. 80C. In either type of proceeding, Petitioners could attempt to assert class-action claims, even if it turned out they were unavailable in PCR proceedings.

While it is true that Maine Supreme Judicial Court appears to have never held that a class mechanism is available in any of the proceedings potentially available to Petitioners in state court, it also appears to have never rejected the applicability of a class mechanism to those proceedings.[13]

---

[12] MDOC will likely oppose class treatment of this putative class action, including on the same grounds MDOC will oppose class certification in the federal case, but the opposition of one party does not establish that the remedy is unavailable.

[13] Indeed, even in the federal habeas context, uncertainty remains as to whether a class action is permissible. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 858 n.7 (2018) (Thomas, J., concurring in part) ("This Court has never addressed whether habeas relief can be pursued in a class action.").

17

The reality is that no one knows whether Maine courts would allow such class claims. But Respondents do not have to establish that such a remedy is permitted; Petitioners must establish—to a "certainty"—that such a remedy is *not* permitted. *Roman*, 675 F.3d at 209. Thus, even if lack of a class mechanism could be said to make state processes "ineffective," Petitioners still cannot be excused from exhaustion, since the most they can establish is uncertainty as to the availability of such a remedy in the state courts.

## II.    *Younger* Abstention Bars Denbow's Claims.

Finally, Petitioner Denbow cannot obtain relief in this action or serve as class representative because his claims are barred by *Younger* abstention. *Younger* abstention is premised on the "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances" and "a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (internal citations and quotation marks omitted).

As the Supreme Court has recently clarified, *Younger* abstention is potentially applicable to three specific types of "exceptional" state-court actions: "(i) criminal prosecutions, (ii) civil proceedings that are akin to criminal prosecutions, and (iii) proceedings that implicate a State's interest in enforcing the orders and judgments of its courts." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015). If the state court proceeding falls within one of these categories, *Younger* further requires that the requested federal relief interfere (i) with an ongoing state judicial proceeding; (ii) that implicates an important state interest; and (iii) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge. *Id.*

Here, all the requirements for *Younger* abstention are met. A state PCR proceeding in

18

which the petitioner seeks relief from a criminal sentence ordered by a state court "implicate[s] a State's interest in enforcing the orders and judgments of its courts," *id.*, and is thus one of the "exceptional" proceedings to which *Younger* applies. *See Willis v. Dembe*, No. CV 15-3821, 2016 WL 3612000, at \*3 (E.D. Pa. July 6, 2016) (citing cases to show that "courts have interpreted [*Younger*] test to include pending state habeas actions"); *see also Heck v. Humphrey*, 512 U.S. 477, 487 n.8 (1994) (observing in dicta the abstention may be appropriate if a federal civil-rights action is brought during the pendency of a state habeas proceeding); *Morrow v. Holland*, No. 18-2412, 2019 WL 2720213, at \*4 (W.D. Tenn. June 27, 2019) (applying *Younger* to postconviction proceeding); *Canales-Robles v. Peters*, 270 F. Supp. 3d 1230, 1241 (D. Or. 2017) (same).

Moreover, the three additional *Younger* factors are met: Denbow's PCR proceeding is ongoing. (Ex. C.) An order from this Court releasing Denbow from custody would interfere with that state proceeding by effectively terminating it. *Bowell v. Paramo*, No. CV1709313, 2018 WL 4735721, at \*4 (C.D. Cal. Aug. 6, 2018), *report and rec. adopted,* 2018 WL 4698250 (C.D. Cal. Sept. 28, 2018) (holding that federal action seeking release from custody "would entail interference [with state habeas proceedings] because the ongoing state proceeding effectively would be terminated"). Moreover, state habeas and post-conviction proceedings implicate a state's "enforcement of criminal laws and the administration of its judicial system," which are "vital state interests." *Ridge v. Campbell*, 984 F. Supp. 2d 364, 375 (M.D. Pa. 2013); *see also Wiltse v. Smith,* No. 17-CV-01022, 2018 WL 1517176, at \*2 (D.N.M. Mar. 27, 2018) ("the state has an important interest in reviewing the constitutionality of Petitioner's criminal conviction and sentence"); *Shove v. Martel*, 510 F. App'x 503, 503 (9th Cir. 2013) (habeas proceeding "implicates important state interests"). Indeed, the State's interest in postconviction review proceedings is precisely the same as its interest in the original criminal proceeding, which *Younger* itself recognizes as an interest

meriting abstention. And, finally, as already shown in Part I, Denbow has a full opportunity to advance his federal constitutional challenge in those state proceedings. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 17 (1987) (holding that an "unusual fact situation, never before addressed by the [state] courts" did not defeat abstention where plaintiff failed to show that state court procedures were "so deficient" that courts could not adjudicate constitutional claims); *Carbajal v. Hotsenpiller*, 524 F. App'x 425, 428 (10th Cir. 2013) (delay in state-court post-conviction proceeding did not establish state court provided an inadequate forum for *Younger* purposes). Because Denbow's state petition provides an adequate remedy for Denbow to advance his constitutional challenges, and because a federal-court decision ordering the release of Denbow would interfere with that proceeding, this Court should abstain and dismiss Denbow's petition.

## Conclusion

The petition for habeas corpus is barred by 28 U.S.C. § 2254(b) and (c) and should be dismissed without prejudice.

Dated: June 22, 2020

AARON M. FREY
Attorney General

/s/ Jonathan R. Bolton

Jonathan R. Bolton
jonathan.bolton@maine.gov
Jillian R. O'Brien
jill.obrien@maine.gov
Alisa Ross
alisa.ross@maine.gov
Assistant Attorneys General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800