UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOSEPH A. DENBOW et al., | ) |
|         Petitioners, | ) ) ) |
| v. | )   No. 1:20-cv-00175-JAW |
| MAINE DEPARTMENT OF CORRECTIONS et al., | ) ) ) ) |
|         Respondents. | ) |

**ORDER ON CONVERSION OF PETITION, APPLICATION OF HABEAS RULES, AND DISCOVERY REQUESTS**

Respondents request that the Court convert a habeas petition brought pursuant to 28 U.S.C. § 2241 to one brought under 28 U.S.C. § 2254. Because the Court is not required to do so under First Circuit caselaw and doing so could create potentially troubling collateral consequences for Petitioners, the Court declines to do so. The Court exercises its discretion to apply the Rules Governing Section 2254 Cases and, pursuant to Rule 6 of those rules, finds good cause for most of Petitioners' discovery requests, including their requested depositions.

**I.   PROCEDURAL BACKGROUND**

On June 15, 2020, the Court issued a scheduling order requiring Petitioners in this matter, Joseph Denbow and Sean Ragsdale, to send discovery requests to Respondents, the Maine Department of Corrections and Commissioner Randall Liberty, that same day. *Order on Jt. Proposed Scheduling Order* at 2-3 (ECF No. 29). The Court also required the parties to file a joint proposal on areas of discovery, "including objections by Respondents for lack of good cause under Rule 6(b) of the

Rules Governing Section 2254 Cases," by June 17, 2020. *Id.* at 3. On June 17, 2020, the parties complied with the Court's order. *Jt. Status Update and Statement of Disc. Reqs. by Pet'rs & Objs. by Resps.* (ECF No. 30) (*Jt. Status Update*).

In the parties' joint filing, Petitioners stated that they did not object to the Court applying the Rules Governing Section 2254 Cases to this case for purposes of discovery. *See id.* at 2-3. However, they contended that the Court should not convert their petition from one brought under 18 U.S.C. § 2241 to one brought under 18 U.S.C. § 2254, arguing that First Circuit caselaw does not require conversion, that conversion would have serious collateral implications for Petitioners which had not been briefed, and that there was no need for the Court to reach this question at this time. *Id.* at 3. Respondents, on the other hand, argued that it was appropriate for the Court to convert Petitioners' petition but did not go so far as to argue this is required by First Circuit caselaw. *Id.* at 5-6.

Because the Court believed that it would be inefficient to leave unanswered the questions of conversion and application of the Rules Governing Section 2254 Cases, the Court ordered the parties to brief: (1) whether the Court is required to formally convert the § 2241 petition to a § 2254 petition and, (2) regardless of the answer to the conversion issue, whether the Court should apply the Rules Governing Section 2254 Cases to this case. *Interim Order on Disc. Reqs.* at 1-3. Respondents filed their memorandum on July 2, 2020. *Resps.' Mem. of Law in Supp. of Application of the Rules Governing § 2254 Cases to this Action* (ECF No. 35) (*Resps.' Mem.*). On

July 10, 2020, Petitioners responded. *Pet'rs' Mem. Regarding the Applicability of the Rules Governing Section 2254 Cases* (ECF No. 38) (*Pet'rs' Mem.*).

## II.  PARTIES' POSITIONS

### A.  Respondents' Memorandum

#### 1.  The Court Should Convert the Petition

Respondents argue that Petitioners "mislabeled their petition as a § 2241 petition, when the relief they seek is governed by 28 U.S.C. § 2254." *Resps.' Mem.* at 2. By contrast, they contend that "[s]ection 2241 'establishes the general authority of the federal courts to issue habeas relief,'" *id.* (quoting *Dominguez v. Kernan*, 906 F.3d 1127, 1134 (9th Cir. 2018)), and section 2254 "is a limitation on § 2241's grant of habeas authority." *Id.* Respondents state that "[s]ection 2254(a) is phrased as a restriction, providing for federal habeas review for a state prisoner '*only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Id.* at 3 (emphasis in original) (quoting 28 U.S.C. § 2254(a)).

Respondents raise a "circuit split as to whether state prisoners can challenge the 'execution' of a sentence under § 2241, without § 2254's restrictions," and state that the "First Circuit has adopted the majority view" of this question. *Id.* at 3 (citing *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 876 n.9 (1st Cir. 2010)).

Respondents state that "[u]nder *Gonzalez-Fuentes*, there can be no serious dispute that § 2254 'governs' the claims of Petitioners," *Resps.' Mem.* at 3 (quoting *Gonzalez-Fuentes*, 607 F.3d at 876 n.9), and posit that "[t]he only question that remains is whether the petition, despite being governed by § 2254, should be

3

permitted to retain its self-designation as a § 2241 petition." *Id.* at 3-4. Respondents point to Second and Eleventh Circuit cases which they say "illuminate[] the logical flaw in Petitioners' position . . .." *Id.* at 4 (citing *Thomas v. Crosby*, 371 F.3d 782 (11th Cir. 2004); *Cook v. N.Y. State Div. of Parole*, 321 F.3d 274 (2d Cir. 2003); *Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003)).  This flaw, in Respondents' view, is that "[b]ecause § 2254 is a limitation on federal courts' powers under § 2241, *every* state-prisoner habeas action is a § 2241 petition," and thus "if Petitioners are correct that they can exempt themselves from the Habeas Rules by labeling their petition a '§ 2241 petition,' so too can every other state prisoner bringing a habeas claim."[1] *Id.* at 5 (emphasis in original).

### 2. The Court Should Apply the Habeas Rules

Respondents argue that if the Court declines "to formally convert the petition to a § 2241 petition, it should exercise its discretion to apply the Habeas Rules to this case under Rule 1(b)" of the Rules Governing Section 2254 Cases. *Id.* at 6. Respondents argue that these rules were put in place to avoid that opaque analysis required under Federal Rule of Civil Procedure 81(a)(4)(B), and that Respondents could not find a single case in which a Court declined to exercise its discretion under Habeas Rule 1(b). *Id.* at 6-7. Respondents also note that to the extent "the Habeas Rules are an awkward fit for Petitioners' claims due to the lack of a state-court record,

---

[1] Respondents make two additional points. First is that, contrary to Petitioners' argument, the language of *Gonzalez-Fuentes* is best read as supporting the idea that federal prisoners, not state prisoners, may file motions under section 2241. *Id.* at 3 n.3.  Second, Respondents contend that "Petitioners' constitutional concerns about the application of § 2244(b)'s prohibition of successive habeas petitions as a result of conversion would be properly addressed not here, but in any future petition filed by one of the Petitioners" and that those concerns are unavailing in any event. *Id.* at 5 n.5.

4

that is only because Petitioners have disregarded their obligation to exhaust state-court remedies under § 2254(b)." *Id.* at 7 (citations omitted).

### B.  Petitioners' Memorandum

#### 1.  The Court Should Not Convert the Petition

Petitioners argue the Court should not convert their petition because doing so "could bar named petitioners—or even all putative class members—from later asserting any constitutional infirmity in their convictions or sentences, despite having no opportunity to raise such challenges in this case." *Pet'rs' Mem.* at 2. In Petitioners' view, "a key consideration before ordering conversion is the risk that 'construing [a filing] as a section 2254 petition might cause [a party] to forfeit unintentionally any otherwise meritorious claims for federal habeas relief he might have.'" *Id.* (alterations in original) (quoting *Cook*, 321 F.3d at 276). Petitioners contend, based on this, that "Respondents are wrong . . . in claiming that concerns about [Petitioners'] second or successive petition should be delayed until 'any future petition filed by one of the Petitioners.'" *Id.* (citing *Resps.' Mem.* at 5 n.5).

Petitioners state that though "these concerns are typically only procedural . . . in this case they are also substantive and militate against any conversion at all," as there is a "presumption of reviewability of the Maine Department of Corrections' response to the COVID-19 pandemic, as well as canons of interpretation that avoid implicating the Suspension Clause" of the United States Constitution. *Id.* at 3 (citing U.S. CONST. art. I, § 9, cl. 2). Petitioners assert that conversion would be in conflict with the Suspension Clause's guarantees, as it could "require Petitioners (and

5

potentially putative class members) to choose between pursuing their challenges to unconstitutional prison conditions during a deadly pandemic, and other potentially meritorious constitutional or statutory challenges to their conviction or sentence" which, in the context of the COVID-19 pandemic, is contrary to the purposes of the bar on successive petitions. *Id.* at 3-4.

Petitioners argue that these "concerns under the Suspension Clause invoke the 'clear statement' rule" that when "a particular interpretation of a statute invokes the outer limit of Congress' power, [courts] expect a clear indication that Congress intended that result." *Id.* at 4 (quoting *INS v. St. Cyr*, 533 U.S. 289, 299 (2001), *superseded by statute on other grounds as recognized in Nasrallah v. Barr*, 140 S. Ct. 1683, 1690 (2020)).  But, Petitioners note, in section 2254, "there is no 'clear statement' requiring conversion of petitions filed under § 2241 challenging conditions of confinement as unconstitutional," and the First Circuit "has recognized that § 2241 'may be used to attack the manner in which a sentence is executed, as opposed to the sentence itself . . . .'" *Id.* at 4 (quoting *Gonzalez-Fuentes*, 607 F.3d at 875 n.9).

Petitioners contend that allowing this petition to proceed under section 2241 is consistent with the Supreme Court's rules governing original jurisdiction over habeas petitions and "numerous § 2241 petitions filed on behalf of post-conviction State prisoners during the COVID-19 pandemic," and further state that the Court is not required to convert the petition under First Circuit precedent. *Id.* at 4-6. Petitioners end by requesting that, if the Court should determine the petition must

6

be converted, the Court give advance notice and the opportunity to amend or dismiss the petition. *Id.* at 6-7.

### 2. The Court Should Apply the Habeas Rules

Petitioners state that, apart from Rule 9 of the Rules Governing Section 2254 Cases (which governs successive petitions), the Court should apply the Habeas Rules. *Id.* at 7.

## III. DISCUSSION

In summary, the Court will not convert Petitioners' petition, will apply the Rules Governing Section 2254 Cases with the exception of Rule 9[2] (which is not factually before the Court), and finds good cause for most, but not all, Petitioners' discovery requests.

### A. Conversion

Respondents appear to concede by negative implication that First Circuit caselaw does not require conversion. In *Gonzalez-Fuentes*, a case brought by state prisoners, the First Circuit stated that "[s]ection 2241, which does not contain many of the hurdles that § 2254 places before habeas petitioners, may be used to attack the manner in which a sentence is executed, as opposed to the sentence itself." 607 F.3d at 875 n.9. The First Circuit went on to state that "even if the substance of the challenge here could theoretically support jurisdiction under § 2241, the majority view is that prisoners in state custody are required to comply with all the

---

[2] Rule 9 of the Rules Governing Section 2254 Cases reads: "Before presenting a second or successive petition, the petitioner must obtain an order from the appropriate court of appeals authorizing the district court to consider the petition as required by 28 U.S.C. § 2244(b)(3)and (4)."

7

requirements laid out in § 2254 whenever they wish to challenge their custodial status . . .." *Id.* This language strongly suggests that a state prisoner may be able to use a section 2241 petition in the First Circuit.

The Respondents' best argument on this point is that the First Circuit's language in *Gonzalez-Fuentes* does not mean quite what it says, because the case the *Gonzalez-Fuentes* panel cited for the idea that "[s]ection 2241 . . . may be used to attack the manner in which a sentence is executed" involved federal, as opposed to state, prisoners. *See Resps.' Mem.* at 3 n.3 (citing *Muniz v. Sabol*, 517 F.3d 29 (1st Cir. 2008)). But the First Circuit's language is more expansive than Respondents allow. To adopt the Respondents' argument would elevate the First Circuit's cited authority over the language of the First Circuit opinion itself.

Respondents cite cases from the Second and Eleventh Circuits that do require conversion. *See Resps.' Mem.* at 4 (citing *Thomas*, 371 F.3d at 782; *Cook*, 321 F.3d at 278; *Medberry*, 351 F.3d at 1059-60). However, there is a circuit split on this issue, *see Allen v. White*, 185 F. App'x 487, 490 (6th Cir. 2006) (unpublished) ("This circuit has allowed state prisoners to proceed under § 2241, but subject to the restrictions imposed by § 2254"); *Davis v. Roberts*, 425 F.3d 830, 833 (10th Cir. 2005) (state prisoner's "challenge to the execution of [his] sentence should be brought under 28 U.S.C. § 2241"). In the absence of controlling First Circuit precedent but holding faith with First Circuit guidance, the Court sees no reason to take a view of conversion that is less friendly to litigants' rights.

8

At the same time, the Court will not go further than the First Circuit already has suggested. The collateral consequences of conversion may be significant, and in the absence of mandatory authority requiring it to do so, the Court will not inflict those consequences on the inmate litigants in this case. While Respondents argue that the proper time for Petitioners to raise constitutional concerns about being barred from filing a successive petition is when Petitioners file future petitions, *Resps.' Mem.* at 5 n.5, this position is untenable for Petitioners—forcing them to take an all-or-nothing gamble on their ability to file a future petition regarding a wholly different subject matter.

Furthermore, the Court is not convinced by Respondents' argument that if Petitioners are able to escape the successive petition bar by filing under section 2241, any future state prisoner will be able to do so as well. *Id.* at 5. If — as Respondents worry — the Court's treatment of this case has a deleterious impact on future cases, courts can address the impact in the context of a future case.

The Court declines to convert Petitioners' petition.

### B.    The Rules Governing Section 2254 Cases

In light of the continued agreement between the parties on the application of the Rules Governing Section 2254 Cases, *Resps.' Mem.* at 6-7; *Pet'rs' Mem.* at 7, the Court exercises its discretion under Rule 1(b) to apply the Rules Governing Section 2254 Cases to this case—with the exception of Rule 9.

### C.    Good Cause Determinations

As the Court has written, "the Court views this as a case where fairly broad-ranging discovery is necessary to resolve the many factual disputes at issue." *Interim Order on Disc. Reqs.* at 4. With the exception of the specific document requests and interrogatories discussed in more detail below, the Court finds good cause for all Petitioners' document requests, interrogatories, and deposition requests pursuant to Rule 6 of the Rules Governing Section 2254 Cases. As Petitioners request, *see Jt. Status Update* at 5, the Court expects the parties to engage in the usual meet-and-confer process to resolve issues related to privilege, burdensomeness, and the like—raising any unresolved disputes with the assigned Magistrate Judge.

### 1. Document Request 1: Detailed Floor Plans

Respondents argue that "[p]hysical design information such as floor plans are the most highly protected information that corrections departments maintain" and "object to producing this information," countering that "surveillance footage . . . would likely satisfy any need to see the layout of physical plan[]s." *Id.* at 8. Petitioners state that they "are willing to explore the solution proposed by Respondents, so long as it is possible to simultaneously review the surveillance footage alongside information about the dimensions of pods, common areas, and cells . . . ." *Id.* at 9. Given this position by Petitioners, there does not appear to be a dispute regarding this request for the Court to decide at this time.

### 2. Document Request 2: Zoom Inspection

Respondents argue that "[t]his is not a document request but an inspection request," and further state that it is impossible "because there is no wireless internet

in the facilities . . ..." *Id.* at 9.  Respondents instead suggest that they "provide a reasonable amount of surveillance footage" from a single weekday selected by the Court between June 10 and 17.  *Id.*  Petitioners do not object to Respondents' proposed solution but state that the footage "must cover dorms and common areas, as well as routes of transit throughout the facility, meal halls, and medical areas."  *Id.*  Petitioners request, in light of Respondents' objection and Petitioners' conditional agreement with respect to Document Request 1, that the Court "find good cause for Petitioners to obtain dimensions of dorms, common areas, and cells, which are commonly provided and do not present the same security risks as blueprints or floor plans."  *Id.*

The Court finds good cause for Respondents' proposed provision of surveillance footage to Petitioners.  *Id.* at 9.  Absent a discrete proposed date, the Court selects June 12 as the date from which Respondents must provide surveillance footage.  The Court does not now address which areas the surveillance footage must cover, as the parties should first meet and confer as to the scope of the footage that will be turned over.  Also, the Court finds that there is good cause for Petitioners to obtain the dimensions they seek.  These dimensions go directly to the social distancing questions at the heart of this case, and Respondents did not object to providing dimensions to Petitioners.

### 3. Interrogatory 11: Staffing Plans

Respondents "object that detailed staffing information . . . creates an enormous safety risk" but states that MDOC "would not object to providing higher-level, general

information on staffing as planned at each facility . . ..." *Id.* at 15. Petitioners state that "[g]iven the Respondents' agreement to provide 'higher-level' information that is responsive to this request, Petitioners request that the Court find there is good cause for the request, and allow the parties to perform a traditional meet-and-confer." *Id.* Given the security concerns raised by Respondents, which the Court regards as legitimate, the Court finds good cause for the sort of high-level information referenced by Respondents but not for the more granular information requested by Petitioners.

### 4.     Interrogatories 18 & 19

Petitioners state that they "have agreed to withdraw Interrogatories 18 and 19, based on a discussion of Respondents' objections." *Id.* at 16. With this withdrawal, there is no dispute requiring resolution over Interrogatories 18 and 19.

### 5.     Depositions

Petitioners state that they "have noticed a 30(b)(6) deposition for a Maine DOC representative who can testify regarding DOC practices and policies as they relate to COVID[-19] treatment and prevention," as well as depositions of "John Newby, D.P.M., the Regional Vice President of Wellpath, the company that has contracted with Maine DOC to provide all medical care to inmates; Ryan Thornell, Ph.D., the Deputy Commissioner of Maine DOC . . . and Respondents' expert who has not yet been designated." *Id.* at 16. Petitioners argue that "depositions are a critical part of discovery, particularly when preparing for an evidentiary hearing." *Id.* at 17. Petitioners point out that Respondents chose to file declarations from Dr. Newby and Mr. Thornell in opposing Petitioners' motion for a temporary restraining order and

state that—while they think it unnecessary—they are willing to subpoena Dr. Newby. *Id.* at 17-18.

Respondents argue that "depositions would be overly burdensome and would not produce useful evidence," and state that "[i]f the Court is inclined to allow depositions, Respondents would produce Ryan Thornell for a deposition." *Id.* at 18. However, Respondents believe that "Petitioners' 30(b)(6) deposition notice is extremely burdensome and would actually comprise more than a dozen individual depositions" and argue that a deposition of Dr. Newby is inappropriate because he is a third party. *Id.*

The Court finds good cause for all Petitioners' deposition requests. Respondents' deposition-related concern that "MDOC officials are engaged in responding to the ever-changing COVID-19 pandemic," *id.* at 7, is similar to an invocation of the apex doctrine. However, as Petitioners note, Respondents chose to make Dr. Newby and Mr. Thornell declarants. In so doing, they turned these individuals into fact witnesses. Depositions may not be typical in the habeas context, but they are essential for developing and probing the issues in this case. The Court views as reasonable the number of depositions requested by Petitioners and is confident that Respondents' concerns about the constraints of their deponents' schedules in the midst of the pandemic can be addressed through a meet-and-confer process as to the scope and time limitations of the noticed depositions.[3]

---

[3] To the extent Respondents argue that Petitioners' Rule 30(b)(6) notice would require twelve individual depositions, the Court views this as unlikely based on its reading of the topics noticed. But if the Rule 30(b)(6) deposition turns out to be onerous, Respondents are free to bring specific requests to seek the protection of the Magistrate Judge.

## IV.     CONCLUSION

The Court declines to convert Petitioners' Petition for Writ of Habeas Corpus (ECF No. 1) from one brought under 28 U.S.C. § 2241 to one brought under 28 U.S.C. § 2245.  The Court applies the Rules Governing Section 2254 Cases, with the exception of Rule 9.  Finally, the Court finds good cause for Petitioners' discovery requests as expressed in this order.

With regard to remaining discovery disputes over issues such as privilege and burdensomeness, the Court ORDERS the parties to meet and confer.  If the parties are unable to resolve some or all these issues, the parties should submit their remaining disputes to the assigned Magistrate Judge as they would in the ordinary course.

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of July, 2020