UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOSEPH A. DENBOW et al.,              )
                                     )
          Petitioners,               )
                                     )
     v.                              )     No. 1:20-cv-00175-JAW
                                     )
MAINE DEPARTMENT OF                  )
CORRECTIONS et al.,                  )
                                     )
          Respondents.               )

## ORDER ON MOTION TO DISMISS

Respondents move to dismiss Petitioners' petition for habeas corpus seeking relief for state inmates in the face of the COVID-19 pandemic. Respondents contend Petitioners did not exhaust available state remedies. Because the Court concludes that the post-conviction review procedure was available in the state court, that Petitioners did not exhaust this avenue to relief, and that the possible, though not certain, absence of a class remedy in state court does not excuse the failure to exhaust, the Court grants Respondents' motion and dismisses Petitioners' petition.

## I.   BACKGROUND

### A.   Procedural Background

On May 15, 2020, Joseph A. Denbow and Sean R. Ragsdale (Petitioners) filed a petition for habeas corpus and complaint against the Maine Department of Corrections (MDOC) and Randall A. Liberty, the commissioner of the MDOC (Respondents), on behalf of themselves and a putative class of those similarly situated. *Pet. for Writ of Habeas Corpus and Compl. for Injunctive and Declaratory Relief* (ECF No. 1) (*Pet.*). On May 18, 2020, Petitioners filed a motion for a temporary

restraining order (TRO) or preliminary injunction. *Class Mot. for TRO or Preliminary Inj.* (ECF No. 5). On May 27, 2020, Respondents filed a response to the motion for a TRO. *Opp'n to Mot. for TRO* (ECF No. 19). Petitioners filed a reply on May 29, 2020. *Reply in Supp. of TRO* (ECF No. 22) (*Pet'rs' Reply*). The Court held oral argument by Zoom hearing on June 2, 2020. *Min. Entry* (ECF No. 24). The Court denied the motion for TRO on June 8, 2020. *Order on Mot. for TRO* (ECF No. 25).

On June 22, 2020, Respondents filed a motion to dismiss alleging Petitioners' failure to exhaust state remedies. *Resp'ts' Mot. to Dismiss* (ECF No. 31) (*Resp'ts' Mot.*). On July 13, 2020, Petitioners responded. *Pet'rs' Mem. of Law in Opp'n to Mot. to Dismiss* (ECF No. 40) (*Pet'rs' Opp'n*). On July 15, 2020, Respondents informed the Court that they did not wish to seek leave to file a reply, but they nonetheless filed a letter to the Court citing eight new cases that had been decided since their moving brief was filed and new substantive information about one of the Petitioners' state postconviction case. *Letter to the Court* (ECF No. 42) (*Resp'ts' Reply*). The Court interpreted this letter as a reply due to the substantial volume of new authority and, in fairness to Petitioners, granted Petitioners an opportunity to file a sur-reply. *Order* (ECF No. 43). Petitioners filed a sur-reply on July 20, 2020. *Pet'rs' Sur-Reply in Opp'n to Mot. to Dismiss* (ECF No. 45) (*Pet'rs' Sur-Reply*). On August 6, 2020, the Court ordered Petitioners to confirm whether Mr. Denbow had appealed the denial of his state court post-conviction review (PCR) petition. *Order re Sur-Reply to Mot.* (ECF No. 51). That same day, Petitioners responded that he had not filed a notice of appeal. *Notice Regarding the Status of Mr. Denbow's State Ct. PCR* (ECF No. 53).

### B.    Factual Background[1]

### 1.    Joseph Denbow's State Court Proceedings

On April 13, 2020, Mr. Denbow, through the same counsel representing him in this case, the American Civil Liberties Union of Maine (ACLU), filed an emergency petition against the state of Maine (the State) for PCR in the Oxford County, Maine Superior Court. *Pet.*, Attach. 2, *App. – State Ct. Action* at App.001, 007 (*App. – State Ct. Action*). Mr. Denbow filed a supporting memorandum of law, as well as an emergency motion for release on bail and leave to file an unsworn petition. *App. – State Ct. Action* at App.008, 017, 019, 023. In his state court petition, Mr. Denbow

---

[1]        Respondents assert that they filed their motion to dismiss under Rule 5 of the Rules Governing Section 2254 Cases. *Resp'ts' Mot.* at 1. The Court is skeptical. Rule 5 does not contemplate a motion to dismiss; rather, it contemplates an answer to the petition in which Respondents must "address the allegations in the petition" and, in addition, "state whether any claim in the petition is barred by a failure to exhaust state remedies . . . ." RULE 5(b), RULES GOVERNING SECTION 2254 CASES IN THE U.S. DISTRICT COURTS. If Respondents intended to file under Rule 5, then their filing is deficient because it does not fulfill the requirements of that rule. Rather, the Court concludes that Respondents filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) due to lack of exhaustion, and the Court reviewed their motion as such.

        "A motion to dismiss a habeas petition is reviewed under the same standard as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Pittman v. Cook*, No. 3:20-cv-626 (VAB), 2020 WL 2840256, at *3 (D. Conn. June 1, 2020) (citing *Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002)); *see also Ortíz-Rivera v. Caro*, Civil No. 15-2216 (ADC), 2018 WL 4739720, at *2 (D.P.R. Sept. 28, 2018) (in reviewing motion to dismiss petition brought under 28 U.S.C. § 2254, stating that "the Court accepts as true all well-pleaded facts and draws all reasonable inferences in the petitioner's favor"); *Gordon v. Ashcroft*, 283 F. Supp. 2d 435, 437 (D. Mass. 2003) ("Under both Rules 12(b)(6) and 12(b)(1) [of the Federal Rules of Civil Procedure], the court must take as true the well-pleaded facts as they appear in the petition and habeas exhibits, extending the petitioner every reasonable inference in his favor"). Considering a motion to dismiss, a court "accept[s] all well-pleaded facts in the complaint as true . . . ." *Gilk v. Cunniffe*, 655 F.3d 78, 79 (1st Cir. 2011) (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 36 (1st Cir. 2009)). A court also "construe[s] all reasonable inferences in favor of the plaintiff . . . ." *Sanchez*, 590 F.3d at 41 (quoting *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008); *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)). In addition to the well-pleaded allegations in the petition, the Court may consider "documents incorporated by reference in [the petition], matters of public record, and other matters susceptible to judicial notice." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 61 (1st Cir. 2020) (quoting *Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014)).

makes arguments similar to the arguments he is making in his petition in this Court.[2] *Compare Pet. with App. – State Ct. Action* at App.001-023.

On April 15, 2020, the State, by and through Assistant District Attorney Richard Beauchesne, responded to Mr. Denbow's emergency motion for release on bail. *App. – State Ct. Action* at App.025-027. Mr. Denbow replied on April 16, 2020. *Id.* at App.028-030. On April 23, 2020, Mr. Denbow filed an emergency motion for a hearing on post-conviction bail. *Id.* at App.033-035. Also on April 23, 2020, Justice William Anderson of the Maine Superior Court ordered the State to file a response to Mr. Denbow's petition. *Resp'ts' Mot.*, Attach. 6, *Order Assigning Pet. for PCR.* Chief Justice Robert Mullen of the Maine Superior Court assigned the petition to Justice Roland Cole, also of the Maine Superior Court, on April 24, 2020. *Resp'ts' Mot.*, Attach. 10, *Special Assignment Order.* On April 27, 2020, the State, by and through the same counsel representing Respondents in this case, the Maine Attorney General's Office and, more specifically, Assistant Attorney General Jillian O'Brien, responded to Mr. Denbow's emergency motion for a hearing on post-conviction bail. *App. – State Ct. Action* at App.038-041. Mr. Denbow replied on April 29, 2020. *Id.* at App.042-046.

Justice Anderson and Chief Justice Mullen's orders were not docketed until May 20, 2020 due to a clerical error. *Resp'ts' Mot.*, Attach. 3, *Docket Record.* On May 19, 2020, Chief Justice Mullen reassigned Mr. Denbow's petition and accompanying

---

[2]     Respondents state that Mr. Denbow "makes the same claims he is making in this action, but under both the U.S. and Maine Constitutions." *Resp'ts' Mot.* at 4. More precisely, unlike the State petition, Mr. Denbow is making additional claims under the Americans with Disabilities Act or Rehabilitation Act in the petition before this Court.

motion for bail to Justice Thomas McKeon of the Maine Superior Court.  *Resp'ts' Mot.*, Attach. 12, *Am. Special Assignment Order*.   On June 5, 2020, the State filed a response to Mr. Denbow's petition and simultaneously moved to dismiss it for failure to exhaust administrative remedies within the MDOC.  *Resp'ts Mot.*, Attach. 1, *State of Maine's Resp. and Req. for Dismissal of Pet. for PCR*.  Mr. Denbow opposed the motion to dismiss on June 15, 2020.[3]  *Resp'ts' Mot.*, Attach. 13, *Pet'r's Renewed Mot. for Hearing on Bail and Opp'n to State's Mot. to Dismiss*.   On June 24, 2020, Mr. Denbow moved for leave to amend his petition to add class claims.  *Pet'rs' Opp'n*, Attach. 1, *Pet'r's Mot. for Leave to Amend the Pet. and Mot. for Hr'g*.  On June 25, 2020, Justice McKeon denied Mr. Denbow's motion for bail.  *Resp'ts' Reply*, Attach. 2, *Order*.  On July 14, 2020, Justice McKeon dismissed Mr. Denbow's state court PCR petition for failure to exhaust administrative remedies.   *Resp'ts' Reply*, Attach. 1, *Order*.

## 2.   Status of the Maine State Courts During the COVID-19 Pandemic

Beginning in March 2020, the Maine Supreme Judicial Court issued emergency pandemic management orders to respond to COVID-19.  *Resp'ts' Mot.*, Attach. 14, *Revised Emergency Order and Notice from the Maine Supreme Judicial Ct.* (*PMO-SJC-1*).  These orders limited the case types that would be routinely scheduled and heard, with later orders incrementally increasing the case types that

---

[3]   Respondents next discuss a telephonic conference of counsel before Justice McKeon on June 17, 2020, as well as the results of their own investigation into whether other state inmates "have attempted to avail themselves of the state-court PCR process to address COVID-19-related conditions of confinement."  *Resp'ts' Mot.* at 5.  There is, however, no record of the telephonic conference in Mr. Denbow's petition.

would be scheduled. *Id.*; *Resp'ts' Mot.*, Attach. 15, *COVID-19 Phased Management Plan* at 1 (*COVID-19 Phased Management Plan*). From the first of these orders, the Supreme Judicial Court allowed the hearing of motions for review of bail for defendants held in custody and criminal matters related to a defendant's incarceration. *PMO-SJC-1* at 2. This order also provided that a type of case not routinely being heard could still be scheduled and heard upon a showing of urgent and compelling reasons. *Id.* at 3.

On May 27, 2020, the Maine Judicial Branch issued a five-phase approach for the anticipated resumption of all functions of the Maine state courts by September 7, 2020. *COVID-19 Phased Management Plan* at 3-13. This plan made clear that state courts would continue to schedule and hear arraignments, first appearances, and motions for review of bail for people in state custody. *Id.* at 4. Additionally, under the plan, state courts could schedule and hear all other case types and proceedings by video or audio conference. *Id.* at 5. A party could still request that a matter be heard or scheduled by the Superior Court. *Id.* at 6. Effective June 1, 2020, Maine courthouses were open from 8:00 a.m. to 4:00 p.m., Monday through Friday, with visitor restrictions for entrants. *Id.* at 3-4, 14-15.

In three cases related to ballot initiatives and unrelated to conditions of confinement in state prisons and jails, the Maine state courts moved quickly. *See Reed v. Sec'y of State*, 2020 ME 57, ¶¶ 8-11 & n.6; *Resp'ts' Mot.*, Attach. 17, *Order, Avangrid Networks Inc. v. Sec'y of State*, No. CV-20-206 (Me. Super. Ct. May 26,

2020); *Order Establishing Course of Appeal*, *Payne v. Sec'y of State*, No. Ken-20-169 (Me. June 17, 2020).[4]

## II.   THE PARTIES' POSITIONS

### A.   Respondents' Motion to Dismiss

Respondents assert that it is "settled law in the First Circuit that § 2254's rigorous statutory exhaustion requirement—and not the flexible judge-made exhaustion requirement of § 2241 preferred by Petitioners—applies in this case." *Resp'ts' Mot.* at 9 (citing *González-Fuentes v. Molina*, 607 F.3d 864, 875 n.9 (1st Cir. 2010)).   Respondents state that Mr. Denbow "has a pending petition for post-conviction review in the [Maine] Superior Court on the same claims he brings before this Court and thus very much 'has the right to raise' the 'question presented' in 'the courts of the state' and is thus barred by § 2254(c)." *Id.* at 10 (quoting 28 U.S.C. § 2254(c)).   Respondents also point out that Mr. Ragsdale "has not even attempted to invoke state judicial processes to challenge his confinement" and state that "[i]t is rather incongruous to call an otherwise available process unnecessarily time-consuming or futile when one has made no effort to initiate it." *Id.* (quoting *Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381, at *6 (N.D. Ill. Apr. 9, 2020)).   Respondents state that "the only way for Petitioners to overcome the exhaustion requirement is to demonstrate that one of § 2254's two exceptions to exhaustion applies to their claims,"

---

[4]   Respondents discuss prison mail and access to legal materials at MDOC facilities.   *Resp'ts' Mot.* at 7-8.   Although the Court does not have any reason to dispute the Respondents' statements, it could find no corroboration in the record for them and has not considered them in the context of this motion to dismiss.

which Respondents describe as a "heavy burden" Petitioners are unable to meet. *Id.* (quoting *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002)).

### 1. State Court Remedies Are Available and Not Futile

#### a. Joseph Denbow's State Court Proceeding Is Not Futile.

Respondents assert that Petitioners' previous contention that Mr. Denbow's PCR petition was futile because it had not been acted on for five weeks was incorrect, as Mr. Denbow's petition had been acted on but the parties did not discover this for a while due to a clerical error. *Id.* Respondents state that "the case is now moving forward expeditiously," such a clerical error is unlikely to be repeated, and this delay is not sufficient to demonstrate that "the state court processes are 'so clearly deficient' as to be 'futile.'" *Id.* at 10-11 (quoting *Gagne v. Fair*, 835 F.2d 6, 9 (1st Cir. 1987)). Respondents argue that "[b]ecause Petitioners have not given the state court a chance to rule on Mr. Denbow's claims, this Court should dismiss the petition without prejudice." *Id.* at 12.

#### b. Petitioners Cannot Show Maine Courts Are Incapable of Adjudicating COVID-19-Related Claims Brought by Class Members.

Respondents state that "the state courts would clearly not be overburdened by petitions by the two named class members" and "[w]hether state courts would be overburdened if every single putative class member filed a state-court action is not the relevant question and in any event is purely speculative." *Id.* at 12. Respondents cite authority from other district courts suggesting that generalized facts regarding delays caused by COVID-19 are not enough to excuse exhaustion. *Id.* at 12-13 & n.9.

      **c.**     **Other State Remedies Aside from Post-Conviction Relief Are Potentially Available.**

Respondents then describe various alternate routes to relief that Respondents believe may be available to Petitioners, noting that "[i]n pointing out these potential avenues for state-court relief, Respondents do not suggest that a class member's right to such relief would go uncontested by the State in any such proceeding, nor do they waive . . . any arguments that the State might have against such relief." *Id.* at 13 n.10. Respondents argue that Petitioners could "file a petition for writ of habeas corpus under 14 M.R.S. § 5501," "challenge[] the denial of their applications for Supervised Community Confinement (or any other final COVID-related action by MDOC) under the Maine Administrative Procedure Act," or bring an action to correct an illegal sentence under Maine Rule of Unified Criminal Procedure 35. *Id.* at 13-15.

      **2.**     **That State Law Regarding Class-Wide Habeas Relief Is Untested Does Not Excuse Failure to Exhaust**

Respondents contend the Court should reject as a matter of law the argument that "because the state criminal procedure rules do not authorize class treatment, they are not subject to the exhaustion requirement." *Id.* at 15. Respondents say that recognizing this argument would create "a huge, easily exploited loophole in an exhaustion requirement that is supposed to be applied 'consistently and rigorously.'" *Id.* (quoting *Adelson v. DiPaola*, 131 F.3d 259, 262 (1st Cir. 1997)).

Respondents assert that such an exception to the exhaustion requirement is "inconsistent with the very language of § 2254" because even if state law would require individual class members to "seek state-court relief actively through an

individual habeas or PCR action rather than passively as a member of a class," this fact "in no way makes the State's corrective processes 'ineffective' to protect that particular class member's rights." *Id.* at 16 (quoting 28 U.S.C. § 2254(b)(1)(B)(ii)). Additionally, Respondents argue that the statute's reference to "*any* available procedure," *id.* (emphasis in *Resp'ts' Mot.*) (quoting 28 U.S.C. § 2254(c)), "strongly suggests that Congress did not intend for federal courts to excuse exhaustion merely because state-court rules did not include the applicant's preferred procedural mechanism for presenting his claims." *Id.*

Finally, Respondents argue that the fact that a class petition in state court is untested does not make it unavailable for purposes of § 2254 exhaustion, though Respondents are also careful to note that they plan to oppose class certification at the state court level.[5]   *Id.* at 16-17 & n.12.   Respondents assert that "Petitioners undoubtedly have the opportunity to make the case for a class petition before [the state court]; they simply have not tried." *Id.* at 17.   Respondents contend that Petitioners "could attempt to assert class-action claims" in all the various alternative proceedings suggested earlier by Respondents. *Id.*   Respondents conclude by arguing that it is not Respondents' burden to establish that a class action remedy is permitted, but Petitioners' burden to "establish—to a 'certainty'—that such a remedy is *not*

---

[5]   The MDOC asserts it will "likely oppose class treatment of this putative class action" at the state level, *id.* at 17 n.12, despite Respondents' previous assertion that they do not "have any authority to waive" any arguments that the state of Maine, the listed respondent in Mr. Denbow's state court petition, might have. *Id.* at 13 n.10.  As the State acknowledges that Respondents in this case and in the state court case are represented by the Maine Attorney General's Office, any distinction between the two seems, in practical terms, a legal fiction.

permitted." *Id.* at 18 (emphasis in original) (quoting *Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012)).

### 3. *Younger* Abstention Bars Joseph Denbow's Claims

Respondents contend that the requirements for *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37 (1971), are met, as "[a] state PCR proceeding in which the petitioner seeks relief from a criminal sentence ordered by a state court 'implicate[s] a State's interest in enforcing the orders and judgments of its courts'" and thus is an exception proceeding, *Resp'ts' Mot.* at 18-19 (alterations in *Resp'ts' Mot.*) (quoting *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015)); that PCR proceeding was ongoing as of the time Respondents filed their motion to dismiss, *id.* at 19; "[a]n order from this Court releasing [Mr.] Denbow from custody would interfere with that state proceeding by effectively terminating it," *id.*; "state habeas and post-conviction proceedings implicate a state's 'enforcement of criminal laws and the administration of its judicial system,' which are 'vital state interests,'" *id.* (quoting *Ridge v. Campbell*, 984 F. Supp. 2d 364, 375 (M.D. Pa. 2013)); and "[Mr.] Denbow has a full opportunity to advance his federal constitutional challenge in those state proceedings." *Id.* at 20.

### B. Petitioners' Opposition

Petitioners begin by stating that when they filed their petition in this Court, "the state courts were operating at a greatly reduced capacity, with no apparent procedural avenue to adjudicate claims on behalf of the 900+ putative class members who are medically vulnerable to COVID-19." *Pet'rs' Opp'n* at 1. Petitioners assert

that the Court should apply and excuse the prudential exhaustion requirement of 28 U.S.C. § 2241 or, if the statutory exhaustion provision of 28 U.S.C. § 2254 applies, reject Respondents' motion to dismiss because at the time the petition was filed, it appeared that state Court remedies would be unavailable or ineffective to provide necessary relief. *Id.* Petitioners also note that "[i]n their motion, Respondents make no showing that class relief is available under . . . any of the potential remedies on which they rely" and also do not "show that potential remedies such as the Maine Administrative Procedure Act and Maine Criminal Procedure Rule 35 are appropriate to raise the constitutional and federal statutory violations asserted here." *Id.* at 2. Petitioners point out that "Respondents admit that they are trying to have it both ways, arguing in this Court that class relief is available in state proceedings, while acknowledging their intention to argue to the state court against class treatment of Petitioners' claims." *Id.* Finally, Petitioners contend that if "the Court is not inclined to deny the Motion [to Dismiss] outright," it should "defer a final ruling on this Motion and retain jurisdiction until the issue of whether class relief is available is resolved in the state courts." *Id.*

### 1. The Court May Grant Habeas Relief to Petitioners Under 28 U.S.C. § 2241 Without Exhaustion of State Remedies.

Petitioners argue that the Court should waive exhaustion, as "where 'unusual circumstances' exist, a federal court may grant habeas relief pursuant to Section 2241 without exhaustion of state remedies." *Id.* at 3 (quoting *Benson v. Superior Court Dep't of Trial Court*, 663 F.2d 355, 358 (1st Cir. 1981)) (citing *Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977)). They state that given the "extraordinary

12

circumstances posed by the COVID-19 pandemic and its imminent threat to the health and lives of the Class, the Court should determine Section 2241 is applicable here, and that exhaustion is not required." *Id.*

> **2.  The Court May Grant Habeas Relief Under Section 2254 Without Exhaustion Here Where "It Appears that" State Court Remedies Are Unavailable and/or Ineffective to Protect the Rights of Petitioners and Putative Class Members.**

Petitioners point to "two escape hatches from the general exhaustion requirements," arguing "exhaustion of available state court remedies is not required where 'it appears that' (i) state court corrective processes are not available, or (ii) circumstances exist that render such process ineffective to protect the rights of the Petitioners and other putative Class Members." *Id.* at 3-4 (quoting 28 U.S.C. § 2254(b)(1)(B)(i)-(ii)).  Petitioners assert that denial of the motion to dismiss is proper under either of these options because "Respondents have not rebutted Petitioners' showing that it appears that none of" the potential remedies raised by Respondents "were available and effective at the time of filing of the Petition to protect the rights of the putative Class Members" or that class relief is available under any of these procedural vehicles. *Id.* at 4-5.

> **a.  28 U.S.C. § 2254's Exhaustion Requirements Apply Only to Remedies Available at the Time of Filing.**

Petitioners argue as "a threshold matter" that "the Section 2254 exhaustion provisions apply only to a petitioner's failure to exhaust state court remedies that are available 'at the time he files his application in federal court.'" *Id.* at 5 (quoting *Fay v. Noia*, 372 U.S. 391, 399 (1963), *overruled in part on other grounds by Wainwright*

*v. Sykes*, 433 U.S. 72 (1977)) (citing *Dana v. Tracy*, 360 F.2d 545, 548 (1st Cir. 1966)). Petitioners state that "although the decisions in *Fay* and *Dana* predated the statutory amendments in the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), the futility exceptions to the exhaustion requirement have remained the same." *Id.* Petitioners state that "Respondents devote much of their brief to arguing that since the time of filing of the Petition . . . 'it has since become clear' that the Maine courts will proceed with Mr. Denbow's state action," *id.* at 6 (quoting *Resp'ts' Mot.* at 10), and argue that such contentions "are irrelevant, and should be given no weight by the Court." *Id.*

> **b.    Class Relief Is Critical to Protect the Rights and Lives of the Putative Class Members but Is Not Apparently Available in State Court Proceedings.**

Petitioners argue "[a] state remedy is not available, and hence exhaustion is not required, if the availability or effectiveness of a proposed remedy is merely conjectural at the time of filing of the petition" and that "where a petitioner has not exhausted state remedies, 'the court may still grant habeas relief when *it appears that* requiring the petitioner to exhaust his remedies is futile.'" *Id.* at 6-7 (emphasis in *Pet'rs' Opp'n*) (quoting *Banks v. Smith*, 377 F. Supp. 2d 92, 95 (D.D.C. 2005)). In Petitioners' view, "although class relief is critical and necessary in this action to protect the rights, and potentially the lives, of the over 900 putative Class Members, Respondents not only fail to show class relief is clearly available they *admit* that the 'reality is no one knows whether Maine courts will allow such class claims.'" *Id.* at 7 (emphasis in original) (quoting *Resp'ts' Mot.* at 18).

i.   **Class Relief Is Necessary and Critical in this Action.**

Petitioners give background on the COVID-19 virus and repeat some of their allegations about Respondents' response to the virus.  *Id.* at 7-9.  Petitioners state that "[g]iven the urgent risks posed by the COVID-19 pandemic, and the systemic nature of the harm, proceeding as a class is critical to protecting the rights of Petitioners and putative Class Members." *Id.* at 9.

ii.   **There Is No Established Class Remedy Available in State Court.**

Petitioners state that "it does not appear that any class remedy is available to Petitioners and the putative Class Members under state law" and "state law provides that petitions for post-conviction review 'may attack only a single proceeding.'" *Id.* (quoting ME. R. UNIFIED CRIM. P. 67(b)).  Petitioners further contend that PCR petitions are covered by the Maine criminal rules rather than the Maine rules of civil procedure and that "state law provides that the post-conviction review procedures are the 'exclusive method' for 'reviewing post-sentencing proceedings occurring during sentences.'" *Id.* at 9-10 (quoting 15 M.R.S. § 2122).  Petitioners state that because they are "not required to exhaust conjectural remedies . . . the Motion [to Dismiss] must be denied." *Id.* at 10.

iii.   **Filing of Individual PCR Actions by Each Class Member Would Not Provide an Effective or Available Remedy.**

Petitioners argue that "whether a remedy is available is to be determined as of the time of filing of the petition, and therefore whether the Maine Courts are getting

back to more normal operations now," as Respondents argue, "is not relevant." *Id.* at 11. Petitioners also reject Respondents' argument that "the 'mere passage of time' and delay in processing of state remedies does not render a remedy ineffective, *id.* at 12 (quoting *Resp'ts' Mot.* at 11), because "[t]his is not an ordinary case where a habeas petitioner contends he or she is being detained unlawfully, but the only harm the petitioner may suffer while the state court process plays out is the harm of continuing to be unlawfully confined." *Id.*

Petitioners further contend that "proceeding on an individual basis in state post-conviction reviews is not feasible when the risks of COVID-19 to medically vulnerable prisoners—and the State's refusal to adequately protect prisoners from those risks—are common to all claims." *Id.* Petitioners discuss *McPherson v. Lamont*, No. 3:20cv534 (JBA), 2020 WL 2198279 (D. Conn. May 6, 2020), and argue that this case is similar because "it would not be feasible for the Maine Superior Court to expeditiously process 900+ individual petitions, especially during the already difficult logistical challenges posed by the COVID-19 pandemic" including lack of normal access to law libraries. *Id.* at 12-13. Additionally, "due to the prioritization of other matters, the Maine courts often put PCR proceedings at the bottom of the list" and "a wave of over 900 PCR cases would almost certainly overwhelm the Courts," as "even during normal circumstances, obtaining PCR relief is a lengthy and time-consuming process . . .." *Id.* at 13.

        **iv.**      **Respondents Fail to Demonstrate that Any Class Remedy Is Available or Effective for State Habeas Corpus Under 14 M.R.S. § 5501.**

Petitioners contend that, despite Respondents' claim that "each Petitioner and putative Class Member could file a petition for habeas corpus under 14 M.R.S. § 5501," this remedy is not available because "under state law, the writ is only available if a person has no other available means of redress" and "the state PCR procedures provide that they are the exclusive state remedy for post-conviction review." *Id.* at 15. Even if this were not the case, Petitioners argue that "the proposed remedy under 14 M.R.S. § 5501 is . . . subject to the same failings rendering it ineffective to protect the putative Class Members' rights as is the state PCR remedy." *Id.* Additionally, Petitioners point out that Respondents "now concede that they will oppose class treatment in state court." *Id.*

        **v.**      **Respondents Fail to Demonstrate that Any Remedy Under the Maine Administrative Procedure Act or Maine Rule of Unified Criminal Procedure 35 Is Available or Effective to Protect the Rights of the Putative Class Members.**

Petitioners contend that "Section 11001 of Title 5 of the Maine Administrative Procedure Act . . . . would not be available or effective in the circumstances, given the long time frame for administrative actions" and because it is "unknown whether class procedures" are available. *Id.* at 16.

Petitioners further argue that Maine Rule of Unified Criminal Procedure 35 "addresses defects in sentencing, not impermissible conditions in a prison facility which arise only after sentencing" and a motion for relief under the rule must be

made within a year after sentence is imposed.  *Id.*  A time-barred remedy, according to Petitioners, is "not available for purposes of Section 2254."  Petitioners state that "[e]ven if this vehicle were applicable to the type of claims asserted by Petitioners in this case (which it is not), given the one year time limit, it would almost certainly not be available or effective for a large portion of the putative Class" and "it does not provide any basis for class relief."  *Id.* at 17.

> **c.   The State Court Exhaustion Requirements Should Be Deemed Satisfied Based on Respondents' Admission They Will Likely Oppose the Availability of Class Remedies and Other Avenues of Relief in State Court.**

Petitioners point to Respondents' concession "that although they are arguing to this Court that there are unexhausted remedies available to Petitioners in state court, in state court they may take the position that such remedies are not available to Petitioners" and argue that "[t]he federal courts . . . have rejected the notion that a state may escape federal court habeas review by arguing to the federal court that remedies are available to the petitioner in state court" but arguing the opposite in state court.  *Id.*  Petitioners contend that "this Court should not countenance Respondents' attempts to have it both ways, when that position would leave Petitioners without an available and effective avenue to assert their weighty constitutional and statutory claims."  *Id.* at 18.

        **d.**    **The Court Should, in the Alternative, Defer Ruling Until the State Court Determines if a Class Remedy Is Available Under Maine Law.**

Petitioner argues that if the Court "is not inclined to deny the Motion [to Dismiss] outright," it should instead defer ruling until the state court passes on the issue of whether Mr. Denbow's state petition could include class relief. *Id.*

        **3.**    ***Younger* Abstention Does Not Bar Joseph Denbow's Claims.**

Petitioners argue that Respondents' contentions about *Younger* "lack[] merit because the fundamental requirement of *Younger* abstention[,] a federal plaintiff seeking to enjoin a state proceeding, is absent here." *Id.* at 19. Petitioners argue that "*Younger* is 'inapplicable' to a parallel litigation in which the federal plaintiff 'has not asked that any state proceeding be enjoined.'" *Id.* (quoting *Williams v. Lambert*, 46 F.3d 1275, 1282 (2d Cir. 1995)). Petitioners assert that "Mr. Denbow has not asked this Court to enjoin any ongoing state proceeding or interfere with an action being prosecuted by Respondents" and therefore "*Younger* is not applicable." *Id.* Petitioners conclude by attacking Respondents' argument that "an order from this Court releasing Mr. Denbow would interfere with his pending state court action by effectively terminating it," arguing that "terminating a case because of mootness is not at all the same as seeking to enjoin it." *Id.* at 20.

**C.**    **Respondents' Reply**

Respondents apprise the Court of new district court authority dismissing or recommending dismissal "of COVID-19 related federal habeas petitions for failure to exhaust." *Resp'ts' Reply* at 1-2 (citing cases). Respondents also alert the Court that

Mr. Denbow's state PCR petition was dismissed for failure to exhaust administrative remedies and, prior to that, the same court denied his motion for bail. *Id.* at 1.

### D.   Petitioners' Sur-Reply

Petitioners state that "the denial of post-conviction bail and ultimate dismissal of Mr. Denbow's state petition for post-conviction review do not support the Respondents' motion to dismiss" because these events do not affect the state court remedies that were available at the time the petition was filed, which is the relevant inquiry. *Pet'rs' Sur-Reply* at 1-2. Petitioners then state that "the 21-day period to appeal the state court dismissal has not yet elapsed" and therefore, "[t]o the extent Mr. Denbow does not appeal, the state court dismissal would be fatal to the Respondents' arguments regarding *Younger* abstention, which prevents federal courts from enjoining ongoing state court proceedings." *Id.* at 2. Petitioners conclude by differentiating the new authority raised by Respondents, arguing that many of the cases "do not meaningfully address the futility of state court remedies at issue here" and that the remaining cases do not address "the specific circumstances here: namely, state courts that were unavailable or ineffective to handle the 900+ petitions of all putative class members, and did not offer a class remedy to adjudicate such claims." *Id.* at 2-4.

## III.   LEGAL STANDARD

28 U.S.C. § 2254(b)(1) reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A)   the applicant has exhausted the remedies available in the courts
of the State; or
(B)   (i)   there is an absence of available State corrective process; or
      (ii)  circumstances exist that render such process ineffective to
            protect the rights of the applicant.

A petitioner "has exhausted the remedies available in the courts of the State" when that petitioner has "tendered his federal claim [to the state's highest court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." *Barresi v. Maloney*¸ 296 F.3d 48, 51 (1st Cir. 2002) (alterations in *Barresi*) (quoting *Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir. 2000)). "The petitioner bears the heavy burden of demonstrating satisfaction of the exhaustion requirement." *Id.*

## IV.   DISCUSSION

### A.   *Younger* Abstention Does Not Bar the Court from Considering the Petition

Respondents argue in their motion that Mr. Denbow's PCR petition means the Court should abstain from hearing his claims in this case based on *Younger*. *Resp'ts' Mot.* at 18-20. Petitioners point out that Mr. Denbow's PCR petition has since been dismissed, and "[t]o the extent Mr. Denbow does not appeal, the state court dismissal would be fatal to the Respondents' arguments regarding *Younger* abstention . . .." *Pet'rs' Sur-Reply* at 2. Petitioners then inform the Court that Mr. Denbow did not appeal the denial of his PCR petition and the time to do so has now run. *Notice Regarding the Status of Mr. Denbow's State Ct. PCR* (ECF No. 53). As there is now no state court proceeding, which provided the premise for Respondents' *Younger* arguments, the Court agrees with Petitioners that *Younger* is inapplicable.

**B.**   **The Statutory Exhaustion Requirement of 28 U.S.C. § 2254 Applies to This Case**

Petitioners repeat their argument that the Court should apply the prudential exhaustion requirement of 28 U.S.C. § 2241 rather than the statutory exhaustion requirement of 28 U.S.C. § 2254.  *Pet'rs' Opp'n* at 2-3.  The Court has already ruled that the exhaustion requirement in § 2254 is applicable to Petitioners' § 2241 petition. *Order on Mot. for TRO* at 35-38 (discussing *Brennan v. Wall*, 100 F. App'x 4 (1st Cir. 2004), and *González-Fuentes*, 607 F.3d 864, and concluding that the Court will "appl[y] the statutory requirements of § 2254 to Petitioners' § 2241 claims").  The Court understands Petitioners' desire to preserve arguments for appeal, but the Court will not revisit this ruling.  The statutory exhaustion requirement of 28 U.S.C. § 2254 is applicable.

**C.**   **The Possible Unavailability of Class Relief in the State System Does Not Excuse the Named Petitioners from Exhausting Their Claims in State Court**

Petitioners assert that "[b]ecause Respondents have failed to show that any class remedy is clearly available, and admit that the availability of such relief is conjectural, exhaustion is not required, and [Respondents'] Motion must be denied." *Pet'rs' Opp'n* at 7.  Assuming without deciding that a class remedy is not available in state court, the Court does not see why that should excuse the named petitioners from exhausting.[6]

---

[6]    Any contradiction between the position of the State concerning whether state law and procedure allow for a class action in this situation would be better addressed by the State court, where the difference, if any, between what the State is arguing here and there would be before the court.  For example, it could be one thing if the State contends during the state proceeding that a class action is wholly unavailable under state law and another if the State contends that, although available, the

In *United States ex rel. Sero v. Preiser*, 506 F.2d 1115 (2d Cir. 1974), a habeas class action under § 2254, the Second Circuit stated that "state remedies have been characterized as 'ineffective' for purposes of § 2254(b) not only because they were procedurally inadequate, but also where recent state holdings on a question of substantive law demonstrated that relitigation of the same issue would have proven futile." *Id.* at 1130 (citing *Dana v. Tracy*, 360 F.2d 545, 548 (1st Cir. 1966); *Reed v. Beto*, 343 F.2d 723 (5th Cir. 1965), *aff'd on other grounds sub nom.*, *Spencer v. Texas*, 385 U.S. 554 (1967); *Evans v. Cunningham*, 335 F.2d 491 (4th Cir. 1964)). The Second Circuit went on to state that for a futility exception to be applicable, "[a federal court] must be sure that the state court has had the opportunity recently to consider the identical claim" and that "its decision of the issue [was] so clear that any further consideration given similar cases by the state court is likely to be summary, so that a federal court entertaining such a case is not likely to disrupt state judicial administration." *Id.* "These same considerations" led the Second Circuit to conclude that "the exhaustion requirements for the petitioning class [were] met by the actions of" two of the named petitioners and one other member of the class who fully exhausted. *Id.* "Under these conditions, [the Second Circuit was] unwilling to impose upon other members of the class the burden of inundating the state courts with applications which would be as time-consuming as they would be useless." *Id.*

The rationale for requiring only a subset of petitioners in a class habeas petition to exhaust is a convincing one. Once the courts of a state have passed on

---

proposed class action does not meet the Rule 23 requirements for a class action, an argument that could be made here as well.

claims that are not case specific but shared by a class of petitioners, it would be futile for the remainder of the class to exhaust their state remedies based on those same claims. *See Allen v. Att'y Gen. of Maine*, 80 F.3d 569, 573 (1st Cir. 1996) ("[I]f a state's highest court has ruled unfavorably on a claim involving facts and issues materially identical to those undergirding a federal habeas petition and there is no plausible reason to believe that a replay will persuade the court to reverse its field, then the state judicial process becomes ineffective as a means of protecting the petitioner's rights").    But until at least one petitioner has exhausted those remedies, the Petitioners are unable to demonstrate that the state remedies are futile.

Petitioners contend that "proceeding on an individual basis in state post-conviction reviews is not feasible when the risks of COVID-19 to medically vulnerable prisoners—and the State's refusal to adequately protect prisoners from those risks—are common to all claims." *Pet'rs' Opp'n* at 12.  Although maintaining the current action would be more efficient than multiple separate individual claims initiated in state court, the Court is not convinced that proceeding in state court would be as onerous as the Petitioners contend.  First, the Maine courts may allow the petitioners to proceed with a class action like the one presented in this case.  Second, even if the state courts required them to proceed with separate claims, to do so would not necessarily be unfeasible or inadequate.  If one petitioner won in state court and the petitioner's claims were truly "common to all claims," the State would be hard-pressed to continue to reassert in Superior Court the losing arguments in a subsequent

petition filed by a similarly-situated prisoner.[7]   In fact, the State might be precluded from doing so under non-mutual offensive collateral estoppel.[8]   Last, assuming a petitioner exhausted state remedies and lost, the petitioner would be free to bring a class habeas petition in federal court.   In other words, win or lose, requiring at least one petitioner to exhaust could allow for speedy and uniform resolution of all similar claims.

At the same time, the Court acknowledges that it may be unrealistic to hold such a benign view of the efficiency of any court system to adjudicate multiple individual claims when the risk of COVID-19 pandemic to inmates is so immediate and urgent.   Nevertheless, the overriding point is that § 2254(b)(1) does not allow a federal court to carve out an exception to the exhaustion requirement whenever a federal judge deems that the immediacy and urgency of the facts make it advisable to do so.

---

[7]     If the State did not appeal the trial court judgment or the Supreme Judicial Court affirmed, the State could be barred in the future from raising the losing defense.

[8]     Collateral estoppel, now often called issue preclusion, "prevents a party from relitigating issues that have been previously adjudicated." *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 770 (1st Cir. 2010).   Collateral estoppel may be asserted offensively by a plaintiff who "seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.6 (1979). Mutuality of parties is not strictly required; rather, the "most important question" is whether defendants "received a full and fair opportunity to litigate their claims." *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 575 (1st Cir. 2003) (quoting *Parklane Hosiery*, 439 U.S. at 322).   In answering this question, courts in the First Circuit consider four factors: 1) whether the issue is the same as that disputed in a prior proceeding, 2) whether the issue was actually litigated, 3) whether the issue was determined by a valid and binding final judgment or order, and 4) whether the determination of the issue in the prior proceeding was essential to the final judgment or order.   *Id.* at 575-76.   *See Jones v. Fairbank Reconstruction Corp.*, No. 2:11-cv-437-GZS, 2013 WL 6019294 (D. Me. Nov. 13, 2013) (considering the factors for a claim of offensive collateral estoppel).   If a petitioner were successful in a state court action in which the Respondents were parties, other litigants could seek to preclude the State from relitigating the previously decided issues.

While the Court found multiple cases taking this basic approach, it did not find any cases supporting the Petitioners' proposition that the unavailability of a class remedy in state court excuses the exhaustion of all class members. *See Mays*, 2020 WL 1812381, at *6 (stating that § 2241 claim "on the part of the representatives of subclass A [wa]s barred due to their failure to exhaust available state court remedies"); *Pace v. Chino Inst. for Men*, No. EDCV 09-00841 CBM (AN), 2009 WL 2189885, at *2 (C.D. Cal. July 21, 2009) (dismissing habeas petition brought under § 2254 for failure to exhaust without considering whether § 2254 allows class petitions); *see also Barfield v. Cook*, No. 3:18-cv-1198 (MPS), 2019 WL 3562021, at *8 (D. Conn. Aug. 6, 2019) (applying the same logic in the context of Prison Litigation Reform Act class action); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (same).[9]

### D. Petitioners Have Not Met Their Burden to Show No State Remedies Were Available at the Time of Filing the Petition[10]

The Court agrees with Petitioners that the proper time to evaluate whether "it appears that" there was an "absence of available State corrective process" when Petitioners filed their petition in this case is at the point the petition was filed. *See Pet'rs' Opp'n* at 5-6 (quoting *Dana*, 360 F.2d at 547 n.1) (citing *Fay*, 372 U.S. 391); *see*

---

[9]    Section 2254(b) repeatedly uses singular language (i.e. "a person;" "the applicant"), consistent with an intent that individuals comply with the exhaustion requirement individually.  Once one or more petitioners fully exhausts a claim common to all class members in the state courts, the other class members are not excused from the requirement that they individually comply with section 2254(b); rather, section 2254(b)'s requirement may be met for these class members because further exhaustion would be ineffective to protect their rights.

[10]    Because the Court concludes that the PCR process was available to Petitioners when they filed their petition in this Court, it is irrelevant whether any of the other avenues for relief suggested by Respondents was available.

*also Dana*, 360 F.2d at 548 ("The availability of [state] remedies should be assessed as of the time when application was made for the writ of habeas corpus"). As such, the Court does not consider developments in Mr. Denbow's PCR petition case subsequent to his filing this federal habeas petition on May 15, 2020.

Petitioners cannot show that the PCR process was not available to them and do not argue that it was inadequate to achieve the relief they seek here. Mr. Denbow filed his PCR petition on April 13, 2020. On April 23, 2020, Justice Anderson ordered the State to respond and ordered that the petition should be assigned to a justice, stating "[d]ue to the unique nature of the petition in the face of Petitioner's chronic health issues and the COVID-19 pandemic, the petition will be assigned." *Resp'ts' Mot.*, Attach. 6, *Order Assigning Pet. for PCR* at 2. Justice Anderson specifically noted that "[d]ue to the apparent time-sensitive nature of the petition, the assigned court undoubtedly has the discretion to modify the timelines prescribed by the Maine Rules of Unified Criminal Procedure governing petitions for post-conviction review." *Id.* at 2 n.1. On April 24, 2020, Chief Justice Mullen assigned the petition to Justice Cole. Due to a clerical error, these orders were not docketed until after Petitioners filed their petition in this Court.

In other words, by the time they filed their petition in this Court, Mr. Denbow's PCR petition had been in state court for just over a month with, as far as Mr. Denbow was aware, no response. Although a state court's failure or refusal to proceed expeditiously with a time-sensitive claim based on COVID-19 could make it appear that the state corrective process was not available, Petitioners bear the burden to

demonstrate compliance with the exhaustion requirement of 28 U.S.C. § 2254(b) and they have not done so here. For example, Petitioners did not inform the Court of any steps Mr. Denbow took to check on the status of his PCR petition. If he had taken such steps, he would have discovered that the Maine Superior Court did regard his PCR petition as urgent, that it had both ordered the State to respond, and that it had assigned the petition to a justice within ten days of Mr. Denbow's filing. It is unfortunate that a clerical error made it difficult for Mr. Denbow to actually know that the Superior Court was proceeding speedily with his petition, but it is not enough, standing alone, to demonstrate his compliance with § 2254(b).

The simple fact that Mr. Denbow did not hear about the status of his PCR petition for a little over thirty days, without any indication that he investigated this delay or any evidence that the state courts were actually overwhelmed, is not sufficient for Petitioners to carry their burden. Petitioners cite a Fifth Circuit case, *Shelton v. Heard*, for the proposition that delay can "render the exhaustion requirement meaningless." *Pet'rs' Opp'n* at 12 (citing *Shelton v. Heard*, 696 F.2d 1127, 1129 (5th Cir. 1983)). Far from the thirty-day delay here, however, *Shelton* involved an unexplained delay of sixteen months. *Shelton*, 696 F.2d at 1129. Petitioners further assert that when their petition was filed in this court, "the Maine Judicial Branch was operating with reduced court hours, and had cancelled or delayed all 'criminal matters (except as related to the incarceration of a defendant).'" *Pet'rs' Opp'n* at 11 (footnote omitted) (quoting *PMO-SJC-1*). However, as demonstrated by the fact that the Superior Court assigned Mr. Denbow's petition and

28

ordered the State to respond, hearings of any type were going forward if a party could demonstrate or the court determined urgent and compelling reasons requiring that the hearing take place.  *See PMO-SJC-1* at 3.  Petitioners also reference the State's opposition to "allowing even a hearing on Mr. Denbow's emergency request for bail . . .."  *Pet'rs' Opp'n* at 11.  But the State's opposition within the context of an adversary system is irrelevant to whether "State corrective process" was "available . . .."  28 U.S.C. § 2254(b)(1)(B)(i).  The Court concludes that at the time Petitioners filed their petition in this Court, the PCR procedure was available in the state court.

The Court understands and is concerned about the extraordinary circumstances posed by the COVID-19 pandemic and its potentially grave risk to inmates.  But the State judiciary in Maine is no doubt equally aware and equally concerned about the risks the COVID-19 virus poses to state inmates and the Court draws comfort from its view that the state courts in Maine are just as capable of efficiently addressing critical legal issues affecting fundamental rights as the federal court.  *See Bettencourt v. Bd. of Registration in Med. of Com. of Mass.*, 904 F.2d 772, 776 (1st Cir. 1990) ("Underlying our federal system is a presumption that the state courts are as capable as their federal counterparts of guaranteeing federal rights").  Under our federal system, the federal and state courts are "equally bound to guard and protect rights secured by the Constitution."  *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)).  The exhaustion doctrine is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Id.*  As a result, "federal

29

courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (quoting *Rose*, 455 U.S. at 515).

### E.   The Court Declines to Defer a Ruling Until the State Court Determines if a Class Remedy is Available Under Maine Law

Petitioners argue that, in the alternative, the Court should defer a ruling or stay proceedings until the state court determines whether a class remedy is available under Maine law. *Pet'rs' Opp'n* at 18. As already discussed, however, the Court finds that Petitioners have failed to exhaust, regardless of whether a state class action is available. The Petitioners cite *Rhines v. Weber* for the proposition that "even if a federal court believes state remedies have not been exhausted, it may stay the federal proceeding pending state exhaustion." *Id.* However, *Rhines* allowed district courts to grant stays "only in limited circumstances" involving mixed petitions, where the petitioner's habeas petition included both exhausted and unexhausted claims.[11] *Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Josselyn v. Dennehy*, 475 F.3d 1, 4-5 (1st Cir. 2007) (explaining the policies underlying federal stays in mixed petition habeas cases). Because here the Petitioners' petition contains only unexhausted claims and the lack of a state class remedy does not excuse failure to exhaust, the Court declines to stay the case. The Court does, however, dismiss this action without prejudice because its ruling does not reach the merits of Petitioners' claims and, if

---

[11]   Another reason to stay the federal claim would be if there is a potential statute of limitations problem. *See Anversa v. Partners healthcare Sys.*, 835 F.3d 167, 179 (1st Cir. 2016). But the Petitioners have not suggested there is a statute of limitations issue here.

necessary, once they have exhausted their state remedies, they may reinitiate their claims in this Court.

## V.    CONCLUSION

The Court GRANTS Respondents' Motion to Dismiss (ECF No. 31) and DISMISSES without prejudice Petitioners' Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (ECF No. 1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of August, 2020